## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE:      IRENE PADILLA                  :      Chapter 13
                                           :
                          Debtor(s)        :      Bky. No. 98-18621ELF
                                           :
_____        :
                                           :
IRENE PADILLA,                             :
                                           :
          Plaintiff                        :
                                           :      Adv. No. 07-0156
     v.                                    :
                                           :
GMAC MORTGAGE CORPORATION                  :
                                           :
          Defendant                        :


## O P I N I O N

BY: ERIC L. FRANK, United States Bankruptcy Judge


I.      INTRODUCTION


II.     PROCEDURAL HISTORY


III.    STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)


IV.     THE PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS

        A.  The Facts

        B.  The Claims

**C. The Class Allegations**

**V.    CLAIM  NOS. 1, 2 AND 3 WILL BE DISMISSED BECAUSE THE  DEBTOR'S
DEBT TO GMACM WAS NOT DISCHARGED IN THE CHAPTER 13 CASE**

**VI.    CLAIM NO. 4 WILL BE DISMISSED BECAUSE THE CONFIRMATION
ORDER, BY ITSELF, DID NOT CREATE OBLIGATIONS REMEDIABLE BY
CONTEMPT**

**VII.    CLAIM  NO. 5 STATES A LEGALLY SUFFICIENT CLAIM**

**A.    Introduction**

**B.    After a Cure of a Prepetition Default Has Been Effected Under §1322(b)(5),
A Subsequent Demand for Payment of Any Unclaimed, Alleged Delinquent
Prepetition Charges Violates 11 U.S.C. §1327(a)**

**C.    A Violation of 11 U.S.C. §1327(a) May Be Remedied Through 11 U.S.C.
§105(a)**

**1.    introduction**

**2.    enforcement of 11 U.S.C. §1327(a), generally**

**3.    case law concerning private rights of action under the Bankruptcy
Code**

**4.    section 1327(a) is distinguishable from the Code sections analyzed
under prior case law**

**5.    enforcement of §1327(a) through 11 U.S.C. §105(a)**

**6.    pre-Code practice**

**7.    summary**

**VIII. CLAIM NO. 6 FAILS TO STATE A CLAIM BECAUSE NEITHER THE CONFIRMED PLAN, THE BANKRUPTCY CODE, THE RULES OF COURT NOR THE PARTIES' CONTRACT IMPOSED A DUTY ON GMACM TO GIVE THE DEBTOR NOTICE OR OBTAIN COURT APPROVAL OF POSTPETITION LEGAL EXPENSES GMACM ALLEGEDLY INCURRED DURING THE PENDENCY OF THE CASE**

    **A. Introduction**

    **B. Case Law Supporting the Debtor's Position**

    **C. §506(b) and §1322(e)**

    **D. §506(b), §1322(b)(5) and the ramifications of §1328(a)**

    **E. Fed. R. Bankr. P. 2016**

    **F. The GMACM Mortgage**

    **G. Summary**

**IX. GMACM'S REQUEST THAT THE CLASS ALLEGATIONS BE STRICKEN WILL BE GRANTED, EXCEPT AS TO CLAIM NO. 5**

    **A. Dismissal of Class Claims Based on Claim Nos. 1-4 and 6**

    **B. Claim No. 5**

        **1. GMACM's arguments**

        **2. preliminary jurisdictional concerns**

        **3. the request to strike the class claim is premature**

**X. CONCLUSION**

## I.  INTRODUCTION

Plaintiff-Debtor Irene Padilla ("the Debtor") initiated the above adversary proceeding against Defendant GMAC Mortgage Corporation ("GMACM ") as a class action.  The Debtor alleges that GMACM, a mortgage servicer, violated, on a systemic basis, the rights of debtors in chapter 13 bankruptcy cases that were "confirmed, completed and discharged" in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania.  More specifically, the Debtor alleges that, after the entry of the debtors' chapter 13 discharges, GMACM regularly demanded payment of attorney's fees incurred: (1) prepetition and (2) postpetition/pre-confirmation.  The Debtor complains that GMACM's conduct violates the Bankruptcy Code in various ways.  The Debtor seeks restitution, disgorgement, interest, punitive damages, attorney's and costs.  Presently pending before the court is GMACM's Motion to Dismiss the Amended Class Action Adversary Complaint, Or, In the Alternative, To Strike Class Claims" ("the Motion").

For the reasons explained below, the Motion will be granted in large part.  All but one of the Debtor's claims will be dismissed and all of the class allegations will be stricken with respect to the dismissed claims.  The Motion will be denied with respect to one (1) claim asserted by the Debtor and, in regard to that claim, the Debtor will be required to seek certification of a class "[a]t an early practicable time."  See Fed. R. Civ. P. 23(c)(1)(A) (incorporated by Fed. R. Bankr. P. 7023).

## II.  PROCEDURAL HISTORY

On July 7, 1998, the Debtor filed this chapter 13 bankruptcy case.  On February 23, 1999, the court entered an Order confirming the  Debtor's proposed chapter 13 plan.  On August 22,

2002, the court entered an Order discharging the Debtor.  The bankruptcy case was closed on August 27, 2002.

On July 8, 2005, nearly three (3) years after the case was closed, the Debtor filed a motion to reopen her chapter 13 bankruptcy case so that she might initiate an adversary proceeding against GMACM asserting various claims arising from GMACM's alleged violation of the terms of her confirmed plan and her chapter 13 discharge order.  The Debtor also asserted that GMACM's alleged misconduct was pervasive, making it appropriate to permit the proposed adversary proceeding to proceed as a class action.  GMACM filed a response to the motion on August 15, 2005.  After several continuances, a hearing was held on September 13, 2005.  By Order dated October 12, 2005, the court denied the motion to reopen.[1]  However, the court granted the Debtor the opportunity to conduct certain "narrowly tailored" discovery and to file an amended motion to reopen by January 11, 2006.

On January 11, 2006, the Debtor filed an amended motion to reopen this case.  For unknown reasons, that motion was withdrawn and re-filed, again styled as an amended motion to reopen the case, on January 23, 2006.  GMACM filed a response to the (second) amended motion.  By Order dated March 26, 2007, after a hearing and extensive briefing, I granted the motion to reopen and gave the Debtor until April 20, 2007 in which to file an adversary complaint.  See In re Padilla, 365 B.R. 492 (Bankr. E.D. Pa. 2007).

On April 19, 2007, the Debtor filed an adversary complaint asserting claims on her own behalf and on behalf of a purported class of former bankruptcy debtors.  On July 19, 2007, after

---

[1]     Prior to February 14, 2006, my predecessor on the bench, the Hon. Kevin J. Carey, presided over the proceedings in this bankruptcy case.

GMACM filed a  motion to dismiss the complaint under Fed. R. Bankr. P. 7012 and Fed. R. Civ.

P. 12(b)(6), the Debtor filed an amended complaint (hereafter, "the Amended Complaint").  On

August 27, 2007, GMACM renewed its effort to terminate the litigation by filing the Motion.

Both parties filed memoranda of law in support of their positions and a hearing on the Motion

was held on October 25, 2007.


### III.   STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which

relief may be granted, the court must accept all of the plaintiff's factual allegations as true and

reasonable inferences therefrom in the light most favorable to the plaintiff.  See Hishon v. King

& Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984); Taliaferro v. Darby Township

Zoning Board, 458 F.3d 181,188 (3d Cir. 2006).  Dismissal is appropriate only if, accepting as

true all facts alleged in the complaint, the plaintiff has not pled "enough facts to state a claim to

relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974

(2007).

One Court of Appeals has described the standards a complaint must satisfy as follows:

> the complaint must [first] describe the claim in sufficient detail to give the
> defendant "fair notice of what the . . . claim is and the grounds upon which
> it rests."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 155, 1964 (quoting
> Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Second, its allegations must
> plausibly suggest that the plaintiff has a right to relief, raising that possibility
> above a "speculative level"; if they do not, the plaintiff pleads itself out of
> court.  Bell Atlantic, 127 S.Ct. at 165, 1973 n.14.

E.E.O.C. v. Concentra Health Servs, Inc., 496 F.3d 773, 776 (7th Cir. 2007); accord, Broadcom

Corp. v. Qualcomm Inc., 501 F.3d 297, 317 (3d Cir. 2007).

The court's role in scrutinizing a plaintiff's complaint for Rule 12(b)(6) dismissal purposes is limited. The focus of the court's inquiry is not on whether the plaintiff will ultimately prevail, but "'whether the plaintiff is entitled to offer evidence in support of [her] claims.'" Unite Nat'l Ret. Fund v. Rosal Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007).

In assessing a Rule 12(b)(6) motion to dismiss, a court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record." Unite Nat'l Ret. Fund, 2007 WL 2713051, at *4 (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994)). The court may also consider "'undisputedly authentic' documents" where the plaintiff's claims are based on documents and the defendant has attached copies of the documents to the motion to dismiss. Unite Nat'l Ret. Fund, 2007 WL 2713051, at *4.

## IV.  THE PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS

### A.  The Facts

The Amended Complaint is prolix; its 59 paragraphs and sub-paragraphs meander for twenty-two (22) pages. Even so, the factual allegations underlying the dispute between the parties are relatively straightforward and are not difficult to summarize.

As previously stated, the Debtor commenced her chapter 13 bankruptcy case on July 7, 1998. At that time, she was the owner of the real property located at 5213 Whitaker Avenue, Philadelphia, PA ("the Property") subject to a mortgage serviced by GMACM ("the GMACM

Mortgage").  When the bankruptcy case was filed, GMACM Mortgage was in default.  The

GMACM Mortgage contains a provision permitting GMACM to charge the Debtor for certain

expenses it incurs in the event of a default or the existence of any legal proceeding that may

significantly affect GMACM's rights in the Property.  This provision makes express reference to

bankruptcy proceedings.  See Padilla, 365 B.R. at 495.  According to the proof of claim filed by

GMACM, the prepetition mortgage arrears totaled $5,904.31.[2]

The Debtor's First Modified Chapter 13 Plan ("the Confirmed Plan") was confirmed on

February 23, 1999.  The Confirmed Plan provided for, inter alia :

> (1) the Debtor to pay the Chapter 13 Trustee ("the Trustee") $175/month for 39
> months, for a total of $6,825.00;
>
> (2) all prepetition arrears on the GMAC Mortgage Corporation ("GMACM")
> mortgage to be paid in full from the plan payments delivered to the Trustee
> (including late charges and legal expenses); and
>
> (3) the Debtor to resume making regular monthly mortgage payments to GMACM
> "according to contract terms."

During the course of her chapter 13 bankruptcy case, the Debtor paid all of the required

---

[2]        The amount of the prepetition mortgage delinquency asserted by GMACM was
not specifically alleged in the Amended Complaint, but it is an undisputed fact that is
ascertainable from the claimsregister in the main bankruptcy case.  I may take judicial notice of
the content of the documents filed in the case for the purpose of ascertaining the timing and
status of events in the case and facts not reasonably in dispute.  See Fed. R. Evid. 201;  In re
Scholl, 1998 WL 546607, at *1 n. 1 (Bankr. E.D. Pa., Aug. 26, 1998).  See also In re Indian Palm
Associates, Ltd. 61 F.3d 197, 205 (3d Cir. 1995).

        I note that the original Complaint contained an allegation concerning the
prepetition delinquency, (see original Complaint ¶26.a (Docket Entry No. 1)) and a copy of
GMACM's proof of claim was attached as Exhibit "B."  The Amended Complaint references
GMACM's proof of claim but makes no reference to Exhibit "B" (except for ¶27, which
erroneously refers to Exhibit "B" rather than Exhibit "C").  Yet, the Debtor's counsel again
attached GMACM's proof of claim to the Amended Complaint as "Exhibit B."  This is another
illustration of the Amended Complaint's inexactitude.

plan payments to the Trustee, as well as all required postpetition payments falling due on

GMACM Mortgage.  With respect to any attorney's fees or costs that may have been incurred

after the commencement of the bankruptcy case, during the pendency of the case, GMACM did

not file a proof of claim and made no application to the court for the allowance of attorney's fees

or costs incurred postpetition.

The Debtor received her chapter 13 discharge on August 22, 2000.  On August 23, 2002,

the Debtor sold her residence, resulting in a payoff of the GMACM Mortgage.  In connection

with the sale of the Property, GMACM provided a payoff statement ("the Payoff Statement") to

the Debtor by GMACM.  The Payoff Statement included a demand for payment of the following

charges ("the Disputed Charges"):

|  |  |  |
|---|---|---|
| (1) bankruptcy costs | $  206.50 | |
| (2) attorney's fee | $  184.94 | |
| (3) bankruptcy fee | <u>$1,160.27</u> | |
| | **$1,551.71** | **TOTAL** |

The Debtor paid the Disputed Charges in connection with the sale transaction.

GMACM's demand for payment of the Disputed Charges is the wellspring of the claims

asserted by the Debtor.  Because the Debtor does not know precisely when the Disputed Charges

were incurred, the Debtor alleges in the alternative that the charges were incurred: (1)

prepetition; or (2) post-petition <u>and</u> pre-confirmation.[3]  (<u>See</u> Amended Complaint ¶¶7, 28, 30, 57,

---

[3]      Given the uncertainty surrounding the Disputed Charges, <u>see</u> Padilla, 365 B.R. at
496-97 & nn. 8-9, it is also possible that the charges were incurred post-petition and post-
confirmation.  Indeed, several paragraphs of the Amended Complaint refer to the charges as
"post-petition, pre-discharge."  (<u>See</u> Amended Complaint ¶¶1.b, 2, 17.b., 42, 48.)  These
allegations are sufficiently general to encompass charges incurred during the post-confirmation

58.)  Either way, the Debtor contends that GMACM's post-discharge demand for payment of these charges was unlawful.

## B.  The Claims

It is more difficult, however, to identify with precision the legal claims the Debtor is asserting.  The Amended Complaint is hardly a model of clarity.[4]   Unlike most complaints filed in the federal courts, the Amended Complaint lacks a separate section in which each cause of action is separately numbered and described.

To facilitate my consideration of the Motion, I have identified below the six (6) claims that, based on my reading of the Debtor's inartful pleading, I construe the Debtor to be asserting

---

period of the chapter 13 case.  However, other paragraphs of the Amended Complaint refer specifically to the charges as being "pre-confirmation."  (See id. ¶7, 32, 58.)  To the extent that the Amended Complaint is either unclear or contradictory on the subject, at the hearing on the Motion, the Debtor's counsel clarified that the Amended Complaint is intended to challenge only those charges that were incurred either (1) prepetition or (2) post-petition and pre-confirmation.

[4]     This is exemplified by ¶1 of the Amended Complaint, which asserts that GMACM acted in contempt of :

- the court's "orders" (One must reach ¶14 of the Amended Complaint before learning that the Debtor is referring to the confirmation order and the discharge order); and

- "the very intent of the Bankruptcy Code as indicated by . . .  11 U.S.C. §§1322, 1327 and 1328 (The concept of "contempt of the intent of the Bankruptcy Code" seems more of rhetorical flourish than the articulation of an actionable legal claim).

in the Amended Complaint[5] and I have ascribed a "claim number" to each claim:

> **Claim No. 1**:   The Debtor invokes 11 U.S.C. §105(a)[6] to remedy GMACM's alleged violation of 11 U.S.C. §1328.[7]  (See Amended Complaint ¶42, 49.)

> **Claim No. 2:**  The Debtor invokes 11 U.S.C. §105(a) and the court's contempt power to remedy GMACM's alleged violation of the discharge order.  (See id. ¶42, 49.)

> **Claim No. 3:**  The Debtor invokes 11 U.S.C. §105(a) and the court's contempt power to remedy GMACM's alleged violation of 11 U.S.C. §524.  (See id. at ¶1.)

> **Claim No. 4:** The Debtor invokes the court's contempt power to remedy GMACM's alleged violation of the confirmation order. (See id. at ¶¶14, 15, 16,

---

[5]       Almost ten (10) years have passed since the Debtor filed the underlying chapter 13 bankruptcy case.  More than two (2) years have passed since the Debtor first expressed her intent to assert her class action claims against GMACM and this proceeding is still at the "motion to dismiss" stage.  In the interest of bringing this dispute to its eventual resolution, I find it appropriate to impose some order on the Amended Complaint's disorganized articulation of the Debtor's claims.  See Fed. R. Civ. P. 8(f); South Carolina v. Catawba Indian Tribe, 476 U.S. 498, 524 n.11 (1986) (citing Fed. R. Civ. P. 8(f)) (noting that the court is reading the complaint liberally "so as to do substantial justice"); Frank v. Ross, 313 F.3d 184, 199 (4th Cir. 2002) (noting that notice pleading requires a complaint to be read liberally in favor of the plaintiff).

[6]       11 U.S.C. §105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[7]       Section 1328 was amended by amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), effective as to cases filed beginning October 17, 2005.  Because the Debtor's bankruptcy case was filed prior to October 17, 2005, I will discuss and apply the previous version of the provision.

53, 57, 58.)[8]

**Claim No. 5**:  The Debtor invokes 11 U.S.C. §105(a) to remedy GMACM's alleged violation of the terms of the Confirmed Plan and 11 U.S.C. §1327(a) by its conduct in demanding payment of charges incurred prepetition.[9]  (See id. at ¶¶1.a., 43, 47.)

**Claim No. 6**:  The Debtor invokes 11 U.S.C. §105(a) to remedy GMACM's alleged violation of the terms of the Confirmed Plan and 11 U.S.C. §1327(a) by its conduct in demanding payment of charges incurred postpetition/pre-confirmation.  (See id. at ¶¶1.b., 43, 48.)

---------------

**C. The Class Allegations**

In the Amended Complaint, the Debtor seeks to represent a class of bankruptcy debtors.

She defines the class as all persons

who have been in confirmed and completed Chapter 13 bankruptcy proceedings

---------------

[8]       I make one further observation regarding the claims.  In Paragraph 54 of the original Complaint, the Debtor asserted that GMACM's conduct violated the terms of the mortgage.  (Complaint ¶54).  In her "request for relief" at the end of the original Complaint, the Debtor requested that the court "find GMACM in violation of the . . .  contract."

This allegation was omitted when the Debtor filed the Amended Complaint. Also, the reference to "the contract" in the "Wherefore" clause of the Complaint was omitted from the Amended Complaint.  There is an inconsistency, however, in that, paragraph 55 of the Amended Complaint still refers to GMACM's conduct as being "in gross and reckless indifference to the mortgage contract."  Although the Amended Complaint is somewhat ambiguous, read in its totality, I do not construe it to assert an independent claim that GMACM's conduct violated the terms of the GMACM Mortgage.

[9]       11 U.S.C. §1327(a) provides, in pertinent part:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

from which discharge issued, and debtors whom GMACM have attempted to collect and has collected debts represented by prepetition and postpetition,pre-discharge attorney's fees and costs accrued by defendant.

(Amended Complaint ¶22).  The Debtor restricts the class to all members whose bankruptcy cases were and are filed in the Eastern District of Pennsylvania.  (Id.)

The Debtor further divides the putative class into two (2) sub-classes:

1.  **Prepetition Debt:** Persons who have been debtors in confirmed, completed and discharged Chapter 13 bankruptcy proceedings in the Eastern District of Pennsylvania and who, after discharge have been charged for pre-petition attorney's fees and costs that have been discharged.

2.  **Post-Petition Debt, Pre-Discharge Debt:** Persons who have been debtors in confirmed, completed and discharged Chapter 13 bankruptcy proceedings in the Eastern District of Pennsylvania and who, after discharge have been charged post-petition, pre-discharge attorney's fees and costs that have been discharged.

(Id. ¶17).

The Debtor makes the typical class action allegations under Fed. R. Civ. P. 23(a), i.e., that: (1) the class is so numerous that a joinder of all members is impractical; (2) there are substantial questions of law and fact common to the class; (3) the claims of the class representative are typical; and (4) the class representative will fairly and adequately protect the interests of the class.

The Debtor seeks to maintain the class action under Fed. R. Civ. P. 23(b)(3), alleging that, inter alia: (1) the common questions of law and fact predominate over questions of law and/or fact affecting only the individual members of the class; (2) a class action is superior to any other action for the efficient adjudication of the common legal and factual issue; (3) considering the prospective individual damages at issue, the interests of the class members are best controlled

and served by a class action; and (4) there are no unusual difficulties or other reasons why the

litigation should not proceed as a class action in this forum.

## V.  CLAIM  NOS. 1, 2 AND 3 WILL BE DISMISSED BECAUSE THE  DEBTOR'S DEBT TO GMACM WAS NOT DISCHARGED IN THE CHAPTER 13 CASE

Claims 1, 2 and 3 are all based on the Debtor's theory that GMACM has attempted to

collect prepetition or post-petition/pre-discharge charges that were discharged by the entry of the

chapter 13 discharge order in her case (and in the cases of the class members) and by 11 U.S.C.

§524.  (E.g., Amended Complaint ¶34.)  This theory is without merit because the Debtor's debt

to GMACM was not discharged at the conclusion of her bankruptcy case.

To see why the debt at issue was not discharged, it is first necessary to examine the terms

of the Confirmed Plan.  Under the Confirmed Plan, the Debtor provided for the payment of all of

the prepetition arrears owed to GMACM.  While the Debtor's Confirmed Plan does not cite 11

U.S.C. §1322(b)(5), there can be no doubt that the Debtor invoked §1322(b)(5) in providing for

GMACM's secured claim in the Confirmed Plan.  Section 1322(b)(5) states that a chapter 13

plan may:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

In the Debtor's chapter 13 case, the Confirmed Plan simply used the words "[a]ll prior

arrears . . . shall be paid in full" instead of the statutory words "curing a default" and the words

"making regular monthly payments . . .  according to contractual terms" [and] instead of the

statutory phrase "maintenance of payments while the case is pending."  These variations from the

statutory language do not alter the Debtor's obvious intent to invoke 11 U.S.C. §1322(b)(5).

The next step is to consider 11 U.S.C. §1328(a).  Section 1328(a) provides, in pertinent

part:

> As soon as practicable after completion by the debtor of all payments under
> the plan . . .  the court shall grant the debtor a discharge of all debts provided
> for by the plan or disallowed under section 502 of this title, <u>except any debt</u>
> <u>_</u>
>
>   (1) <u>provided for under section 1322(b)(5) of this title</u> . . . .

11 U.S.C. §1328(a)(1) (emphasis added).

Section 1328(a) does not set forth the consequences of the grant of a chapter 13

discharge.  Nor does it expressly incorporate 11 U.S.C. §524(a), which does describes the effect

of a discharge.  However §524 describes the effect of the grant of a discharge "in a case under

this title," not just the grant of a chapter 7 discharge.  <u>See</u> <u>In re Chappell</u>, 984 F.2d 775, 780 (7th

Cir. 1993); 4A Keith M. Lundin, <u>Chapter 13 Bankruptcy</u> ¶342.2 (3d ed. 2004).  Therefore, the

text of the Code makes clear that a discharge granted under §524(a) sets forth the effect of a

chapter 13 discharge, except to the extent that §524(a) is overridden by §1328(a).

Most pertinent in the present case is the express exception to the discharge set forth in

§1328(a).  This exception applies to claims provided for in the plan under §1322(b)(5).  Here,

because the Confirmed Plan provided for GMACM's claim under §1322(b)(5), GMACM's claim

was expressly excepted from the discharge the Debtor received at the conclusion of her case.

<u>E.g.</u>, <u>Smith v. Keycorp Mortgage, Inc.</u>, 151 B.R. 870, 877 (N.D. Ill. 1993).  It follows that

GMACM could not have violated the Debtor's discharge rights under 11 U.S.C. §524(a) when it

attempted to collect a charge that it asserted fell due under the subject note and mortgage.[10]

Regardless of whether the Debtor's claims are grounded in §1328(a), §524(a) or the discharge order itself, the absence of a discharge of the Debtor's debt to GMACM is fatal to the Debtor's claim that her discharge rights were violated. This conclusion mandates the dismissal with prejudice of Claim Nos. 1, 2 and 3.

---

[10]    While I need not decide the issue, even if the Debtor's debt to GMACM were subject to the discharge injunction, it is doubtful that a violation of the discharge injunction occurred. As stated above in the text, upon completion of the payments under the Confirmed Plan, the Debtor was entitled to a §1328(a) discharge, the scope of which is set forth in §524(a). Section 524(a) provides, in pertinent part, that:

> A discharge in a case under this title –
> . . .
>
>> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

GMACM's request for payment of the Disputed Charges was made when the Debtor sold the subject property and in response to a request for a "payoff statement" needed to permit the Debtor to convey clear title to the purchaser of the property. At no time has the Debtor questioned GMACM's status as the holder of a claim secured by a mortgage against the subject property. By providing the Debtor with a "payoff statement," GMACM was demanding payment as a condition of marking its mortgage satisfied. (The Debtor has not alleged that GMACM made any other attempt to collect the Disputed Charges). By demanding payment of the Disputed Charges as a condition of releasing its lien, it appears that GMACM was attempting to enforce its rights as a lienholder, not collect a debt as a personal liability of the Debtor. Without more, such conduct may not violate 11 U.S.C. §524(a)(2). See Johnson v. Home State Bank, 501 U.S. 78, 83 (U.S. 1991); In re Factor, 243 Fed. Appx. 680 (3d Cir. 2007) (nonprecedential); In re Antonious, 373 B.R. 400, 406 (Bankr. E.D. Pa. 2007).

## VI.  CLAIM NO. 4 WILL BE DISMISSED BECAUSE THE CONFIRMATION ORDER, BY ITSELF, DID NOT CREATE OBLIGATIONS REMEDIABLE BY CONTEMPT

Based on her premise that GMACM's conduct was inconsistent with the Confirmed Plan, the Debtor asserts that the conduct violated this court's confirmation order and is therefore contumacious.  There is authority that either expressly or impliedly supports the Debtor's position.  See U.S. v. Holden, 236 B.R. 156, 166-67 (Bankr. D. Vt. 1999), aff'd, 258 B.R. 323, 328 (D. Vt. 2000).  In re Jones, 2007 WL 2480494, *2 (Bankr. E.D. La. Aug. 29, 2007);  In re Barton, 359 B.R. 681, 690 (Bankr. N.D. Ill. 2006); In re Coulter, 305 B.R. 748, 761 (Bankr. D.S.C. 2003).  However, in all of the cases cited above, the principle supporting the Debtor's position was stated conclusorily and without any supporting analysis.  Respectfully, I disagree because I am not persuaded that the breach of the terms of a confirmed plan that provides for a cure of a prepetition mortgage default is, per se, a violation of the court's confirmation order.  And, in the absence of a violation of a court order, there is no basis for a contempt action for violation of the terms of a confirmed plan.  This reasoning leads to the dismissal of Claim No. 4.

It has long been recognized that a court may invoke its contempt power to require compliance with its orders.  Chambers v. NASCO, Inc. 501 U.S. 32, 44, 111 S.Ct. 2123, 2132 (1991); see also Consumers Gas & Oil v. Farmland Industries, Inc., 84 F.3d 367, 370 (10th Cir. 1996) (quoting United States v. Riewe, 676 F.2d 418, 421 (10th Cir. 1982)).  Civil contempt is a remedy used by courts to not only coerce a defendant to comply with a court order but also to compensate the harmed party for any loss that may have been sustained.  McDonald's Corp. v. Victory Investments, 727 F.2d 82, 87 (3d Cir. 1984); Roe v. Operation Rescue, 730 F. Supp. 656, 657 (E.D. Pa. 1989), aff'd, 920 F.2d 213 (3rd Cir. 1990).  However, civil contempt is an

-17-

appropriate remedy only where "a person violates a court order requiring in specific and definite language that a person do or refrain from doing an act or series of acts." Cottman Transmissions System, Inc. v. Melody, 851 F. Supp. 675, 676 (E.D. Pa. 1994).

In the instant case, contempt does not lie because the confirmation order is not a coercive court order directing creditors to act in conformity with the terms of the confirmed plan. A confirmed plan constitutes a new contract between the debtor and creditors.   In re Padilla, 379 B.R. 643, 663 (Bankr. S.D. Tex. 2007) (citing authorities); see also In re Sims, 278 B.R. 457, 473 (Bankr. E.D. Tenn. 2002) (citing Matter of Kelvin Pub., Inc., 1995 WL 734481, *3 (6th Cir. 1995) (nonprecedential opinion) ("There can be no sanction for contempt without [a] sufficiently willful violation of a clear judicial command.")). The confirmation order judicially validates the plan as the new "contract" between the debtor and the creditors whose rights are addressed in the plan, with the plan either supplementing or superseding the prepetition legal relationship between the debtor and the creditors.  See In re McDonald, 336 B.R. 380, 383 (Bankr. N.D. Ill. 2006); accord, In re Turek, 346 B.R. 350, 354-55 (Bankr. M.D. Pa. 2006); In re Miller, 325 B.R. 539, 543 (Bankr. W.D. Pa. 2005); In re Bryant, 323 B.R. 635, 639 (Bankr. E.D. Pa. 2005).

A breach of contract that would not give rise to a contempt remedy outside the bankruptcy context is not transformed into a violation of a coercive court order and therefore, subject to contempt just because the new "global contract" between a chapter 13 debtor and his or her creditors has been "confirmed" by order of the bankruptcy court.  A good analogy is to compare the court's approval of a chapter 13 plan to a court's approval of a settlement agreement.  A subsequent breach of the terms of a settlement agreement that has been approved by a court to resolve outstanding litigation does not generally give rise to contempt remedies.

-18-

Stewart v. O'Neill, 225 F. Supp. 2d 6, 10 (D.D.C. 2002); National Union of Hosp. & Health Care

Employees. v. Retail, Wholesale, Dept. Store Union, 1984 U.S. Dist. LEXIS 16174, *2

(S.D.N.Y. June 4, 1984).

In short, when viewed properly in contractual terms, a creditor's failure to act in

accordance with a confirmed chapter plan, without more, does not routinely give rise to contempt

proceedings.[11]  Therefore, even if GMACM violated the Confirmed Plan, the Debtor's contempt

claim based on the alleged violation of the confirmation order fails to state a claim and Claim

No. 4 will be dismissed with prejudice.


## VII.  CLAIM  NO. 5 STATES A LEGALLY SUFFICIENT CLAIM

### A.  Introduction

The Debtor alleges in the Amended Complaint that the Disputed Charges were

prepetition charges and that GMACM's demand for payment after conclusion of the case

violated her rights under §1327 of the Bankruptcy Code.  (See Amended Complaint ¶¶1.a., 2, 7,

---

[11]      I qualify this statement with the words "without more," because it is possible that a confirmation order might supplement its "approval" of a plan with other provisions that impose coercive obligations on a party.  In appropriate circumstances, violation of such additional provisions may warrant the use of the contempt remedy.  Also, I do not rule out the possibility that the confirmed plan itself might include terms that could be subject to enforcement through the equitable powers of the court.  To resolve this adversary proceeding, I need not explore this issue further because the confirmation order in the main bankruptcy case stated only that (1) the plan was "confirmed;" (2) the plan was "binding" on the debtor and creditors; and (3) all property of the estate revested in the debtor except for property received by the trustee for the purposes of distribution under the plan.

17.a., 22, 28.)[12]

Accepting as true, for purposes of deciding the Motion, the allegations that the Debtor

paid all of her plan payments and all of the post-petition monthly payments that fell due under

GMACM Mortgage, see Part II, supra, I conclude that Claim No. 5 states a viable claim for

relief.  To reach this conclusion, I find it necessary to analyze two (2) issues:

1. Whether a demand for payment of a delinquent charge incurred prepetition,
   made after the completion of a chapter 13 plan that treated the creditor's claim
   under 11 U.S.C. §1322(b)(5), violates 11 U.S.C. §1327(a); and

2. Whether a violation of §1327(a) is remediable in the bankruptcy court through
   11 U.S.C. §105(a)?

I answer both questions in the affirmative.

## B.   After a Cure of a Prepetition Default Has Been Effected Under §1322(b)(5), A Subsequent Demand for Payment of Any Unclaimed, Alleged Delinquent Prepetition Charges Violates 11 U.S.C. §1327(a)

The Debtor's confirmed plan, fully performed by the Debtor, treated GMACM's claim

under 11 U.S.C. §1322(b)(5), which states that the plan may:

notwithstanding paragraph (2) of this subsection, provide for the curing of

---

[12]    Perhaps the most concise statement of her position is found in ¶28 of the
Amended Complaint, where the Debtor asserts that "a portion [of the Disputed Charges]
represents pre-petition charges that were not included in GMAC's proof of claim that was paid in
full vis-a-vis plaintiff's confirmed and completed Chapter 13 plan."

As explained above in Part II, before this adversary proceeding was commenced,
the Debtor conducted some discovery with respect to the Disputed Charges in connection with
the motion to reopen her bankruptcy case.  Some of the evidence obtained in discovery was made
part of the record in that contested matter.  In granting the motion to reopen, I observed that it did
not seem likely that the Disputed Charges were incurred or assessed prepetition.  See Padilla, 365
B.R. at 497 n.9.  Nevertheless, and for reasons that I do not question or criticize, see id., the
Debtor continues to maintain, in the alternative, that the Disputed Charges were prepetition
charges.

any default within a reasonable time and maintenance of payments while the
case is pending on any unsecured claim or secured claim on which the last
payment is due after the date on which the final payment under the plan is
due.

Thus, the Debtor's chapter 13 plan provided for a "cure" of the prepetition delinquency and

"maintenance of payments" during the pendency of the chapter 13 case.

Section 1327(a) of the Bankruptcy Code, 11 U.S.C. §1327(a), states:

The provisions of a confirmed plan bind the debtor and each creditor,
whether or not the claim of such creditor is provided for by the plan, and
whether or not such creditor has objected to, has accepted, or has rejected the
plan.

According to the Amended Complaint, the Debtor paid the prepetition delinquency, as

demanded by GMACM through its proof of claim, and maintained her payments during the

pendency of the case.  On these facts, it requires no extended discussion to conclude that the

Debtor effected a cure of the prepetition default on the GMACM Mortgage through her

performance of her obligations under the plan.

After a cure of a prepetition default has been effected through §1322(b)(5), any

subsequent demand for payment of any alleged additional delinquent prepetition charges is

inherently inconsistent with the cure of the prepetition delinquency provided for by the confirmed

plan.  Further, conduct that is inconsistent with the terms of the confirmed plan contravenes 11

U.S.C. §1327(a), which binds creditors to the terms of the plan.[13]

---

[13]     See In re Miller, 2007 WL 81052, at *5 (Bankr. W.D. Pa. Jan. 9, 2007);  In re
Pitts, 354 B.R. 58, 65-66 (Bankr. E.D. Pa. 2006); In re Ryerson, 2006 WL 3804675 (Bankr. M.D.
Fla. Nov. 20, 2006); In re McDonald, 336 B.R. 380 (Bankr. N.D. Ill. 2006); see also In re Riser,
289 B.R. 201 (Bankr. M.D. Fla. 2003); In re Rathe, 114 B.R. 253 (Bankr. D. Idaho 1990).  See
generally Bank United v. Manley, 273 B.R. 229, 239-44 (N.D. Ala. 2001) (after lengthy, general
discussion of bankruptcy jurisdiction under 28 U.S.C. §1334(b), holding that such jurisdiction

These conclusions find further support in cases involving chapter 13 plans that provide for a full payment of a secured creditor's entire allowed secured claim. <u>See</u> 11 U.S.C. §1325(a)(5)(B) – as distinguished from plans providing for the payment of the prepetition arrears and maintenance of postpetition monthly instalments falling due under the terms of the obligation, <u>see id.</u> §1322(b)(5)). In cases involving a "payoff" of a secured creditor's entire allowed secured claim, courts have held that post-bankruptcy collection efforts or attempts to retain a lien against the property that secured the creditor's claim are inconsistent with the confirmed plan and §1327(a).[14]

## C.  A Violation of 11 U.S.C. §1327(a) May Be Remedied Through 11 U.S.C. §105(a)

### 1.  introduction

The second question posed in Part VI.A. – whether conduct that violates a confirmed plan is remediable and, if so, how  –  is more complex. It must be considered against the backdrop of

---

"embrace[s] matters beyond those simply affecting the estate," but also includes proceedings involving the rights and duties of the debtor arising in or arising under the Bankruptcy Code); <u>In re Venuto</u>, 343 B.R. 120, 125-29 (Bankr. E.D. Pa. 2006) (discussing basis for exercise of bankruptcy court jurisdiction after completion of bankruptcy case to adjudicate a dispute whether a debtor's performance under a confirmed chapter 13 plan effected a cure of a prepetition mortgage default). <u>But see</u> <u>In re Perry</u>, 2008 WL 1984268, at *4-6 (Bankr. E.D. Tenn. May 2, 2008).

[14]      <u>See</u> <u>In re Talbot</u>, 124 F.3d 1201, 1209 (10th Cir. 1997); <u>Matter of Chappell</u>, 984 F.2d 775 (7th Cir. 1993); <u>In re Barton</u>, 359 B.R. at 690; <u>In re Bryant</u>, 323 B.R. at 644 - 645; <u>In re Echevarria</u>, 212 B.R. 26 (Bankr. D.P.R. 1997); <u>In re Murry-Hudson</u>, 147 B.R. 960 (Bankr. N.D. Cal. 1992); <u>see also</u> <u>Burrell v. Town of Marion (In re Burrell)</u>, 346 B.R. 561 (B.A.P. 1st Cir. 2006) (same result relying on 11 U.S.C. §1328(a)). <u>But see</u> <u>Smith v. Keycorp. Mortgage, Inc.</u>, 151 B.R. at 876. I acknowledge that these cases are not entirely analogous because they involve claims that are subject not only to the binding nature of the plan under §1327(a), but also the chapter 13 discharge under §§1328(a) and 524(a).

a substantial body of case law in which courts have held that a creditor's violation of particular Bankruptcy Code provisions does not give rise to a private right of action.  Many courts have declined to find a private right of action under §§363, 502, 506, 521, 524 and 1322 of the Bankruptcy Code.  Further, in the absence of a private right of action under the Code, many (although not all) courts have been reluctant to invoke §105(a) to provide a remedy.  See Alan M. Ahart, The Limited Scope of Implied Powers of A Bankruptcy Judge: A Statutory Court of Bankruptcy, Not A Court of Equity, 79 Am. Bankr. L.J. 1, 9-11 & nn.60-71 (2005) (collecting cases) ("Ahart"); see generally  Wisniewski v. Rodale, Inc., 510 F.3d 294, 298 -301 (3d Cir. 2007) (discussing Supreme Court jurisprudence on implied private rights of action under federal statutes).

In this Circuit, the Court of Appeals has spoken definitively on the subject of a private right of action under 11 U.S.C. §506: (a) holding that no such private right of action exists; (b) holding that an independent action to remedy alleged violations of that section cannot be based on §105(a) and (c) stating, in dictum, that §105(a) does not authorize private actions to remedy violations of the bankruptcy discharge.  See In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005); see also  In re Figard, 382 B.R. 695 (Bankr. W.D. Pa 2008); Patrick v. Dell Fin. Servs., L.P. (In re Patrick), 344 B.R. 56 (Bankr. M.D. Pa. 2005).

The question, then, is whether the rationales in the case law referenced above apply to preclude a private action to enforce 11 U.S.C. §1327(a)?  I answer that question in the negative. I conclude that §1327(a) differs materially from other Code provisions that may not be enforced through §105(a) actions.  Specifically, I hold a party may invoke 11 U.S.C. §105(a) in order to

enforce the party's rights under 11 U.S.C. §1327(a).[15]


## 2.  enforcement of 11 U.S.C. §1327(a), generally

Judicial enforcement of the substantive command of 11 U.S.C. §1327(a) is on its most

solid footing when §1327(a) supplies the rule of decision in a proceeding that is expressly

authorized by the Code.  For example, the application of §1327(a) may be determinative in

resolving an objection to a proof of claim, a contested matter authorized by the Bankruptcy Code.

See 11 U.S.C. §502(b) (authorizing court to determine whether to allow a claim if a party in

interest objects).  Thus, in Pitts, supra, the court applied §1327(a) in a contested matter arising

from a debtor's objection to a proof of claim.  The application of §1327(a) resulted in the

disallowance of certain components in creditor's proof of claim because allowance would have

been inconsistent with terms of the chapter 13 plan that was fully performed in a prior chapter 13

case.[16]  Similarly, the binding nature of a completed chapter 13 plan could be asserted in state

court proceedings if a creditor whose claim survived the chapter 13 discharge took action in a

manner that was inconsistent with the plan.[17]  Undoubtedly, state courts have the jurisdiction and

---

[15]    I am aware that at least two courts have stated that a debtor has no private right of action to remedy a violation of 11 U.S.C. §1327.  See Guetling v. Household Financial Services, Inc., 312 B.R. 699, 704 (M.D. Fla. 2004); In re Sims, 278 B.R. at 473.  I respectfully disagree with the conclusion of those courts.


[16]    See Pitts, 354 B.R. at 65-66; see also In re Workman, 373 B.R. 460 (Bankr. D.S.C. 2007) (disallowing proof of claim);  In re Taylor, 280 B.R. 711 (Bankr. S.D. Ala. 2001) (same); In re Stewart, 247 B.R. 515 (Bankr. M.D. Fla. 2000) (same).


[17]    For example, if a secured creditor initiated mortgage foreclosure proceedings based on non-payment of prepetition charges not included in the creditors' proof of claim filed in

authority to enforce §1327(a).  See 11 U.S.C. §1334(a) (referring, inter alia, to the bankruptcy

court's "original but not exclusive" jurisdiction of civil proceedings arising under or arising in

cases under title 11).

Frequently, however, debtors have invoked §1327(a) in other contexts.  This adversary

proceeding presents the fairly common scenario of a debtor reopening a bankruptcy case to seek

relief on the ground that a creditor has acted in a manner in derogation of the debtor's rights

under a confirmed, fully performed chapter 13 plan.

In this or similar procedural postures, some courts have granted debtors relief by issuing

injunctions or awarding damages as a remedy for the violation of the terms of a confirmed plan,

either without identifying the precise legal authority for such relief or with only a passing

reference to §1327(a) and the binding nature of confirmed chapter 13 plans.[18]  Some courts have

treated creditor conduct that is inconsistent with a confirmed or fully performed plan as subject to

contempt proceedings, grounding the debtor's entitlement to injunctive, declaratory and/or

---

a completed chapter 13 bankruptcy case, the defendant-former debtor might choose to defend the
foreclosure action, using 11 U.S.C. §1327(a) as the basis for the defense.

[18]    See Talbot, 124 F.3d at 1209 (affirming the power of the bankruptcy court to
order the disgorgement of money a creditor had "extracted" from the debtor "in derogation of the
Plan"); Miller, 2007 WL 81052, at *7 (granting injunctive and declaratory relief enforcing terms
of fully performed plan to cure a prepetition mortgage delinquency); Riser, 289 B.R. at 205 (after
finding that the mortgage "was current at the conclusion of the case," scheduling a hearing on
compensatory and punitive damages arising from post-bankruptcy foreclosure and collection
proceedings instituted by secured creditor); Murry-Hudson, 147 B.R. at 962 (granting motion to
compel secured creditor to release its lien with a citation to 11 U.S.C. §1327).

monetary relief for violation of the §1328(a) discharge order or the confirmation order.[19]  Still other courts have invoked 11 U.S.C. §105(a) as the appropriate source of remedial power to enforce the substance of §1327(a).[20]  The Code does not provide an express statutory remedy to a party seeking to enforce the terms of a confirmed plan.  Thus, whatever the rationale may be for such relief, if the remedy exists, it must be a form of implied remedy.

As discussed below, I conclude that the decisions in which relief has been afforded to debtors seeking to enforce the binding nature of confirmed plans under 11 U.S.C. §1327(a) can be harmonized with decisions that manifest a judicial resistance to private enforcement of other Bankruptcy Code provisions.  I turn to that issue next.

### 3.  case law concerning private rights of action under the Bankruptcy Code

I begin the analysis by summarizing the leading appellate cases regarding implied private remedies under the Bankruptcy Code and under 11 U.S.C. §105(a).  Recent discussions of implied private remedies under the Bankruptcy Code frequently begin with Bessette v. Avco Financial Services, Inc., 230 F.3d 439 (1st Cir. 2000), cert. denied, 523 U.S. 1048, 121 S.Ct.

---

[19]    See Chappell, 981 F.2d at 782-83 (violation of the chapter 13 discharge), aff'g 1991 WL 296608, at *3 (N.D. Ill. Aug. 31, 1991);  Burrell, 346 B.R. 561, 571 (B.A.P. 1st Cir. 2006) (violation of discharge injunction);  McDonald, 336 B.R. at 386-87 (violation of discharge order);  Holden, 258 B.R. at 328 (violation of confirmation order constituted contempt).  Earlier, I rejected the theory that a breach of the terms of the confirmed plan ordinarily constitutes a remediable violation of the confirmation order.  See Part VI., supra.

[20]    In re Davy, 345 B.R. 337, 345-46 (Bankr. D. Colo. 2006);  Coulter v. Aplin (In re Coulter), 305 B.R. 748, 761 (Bankr. D.S.C. 2003).

2016 (2001).  In Bessette, the debtor filed a class action, asserting a claim for damages under,

inter alia, 11 U.S.C. §524.  The debtor alleged that the defendant-creditor collected money from

debtors on account of discharged debts without complying with the reaffirmation procedures of

11 U.S.C. §524.

In Bessette, the First Circuit Court of Appeals declined to determine whether a private

right of action exists for damages or sanctions under 11 U.S.C. §524, seeing "no reason to jump

into the fray with the complex analysis required by" applicable Supreme Court precedent.  Id. at

444.[21]  Rather, the court concluded that a bankruptcy court

> is well within its authority if it exercises its equitable powers to enforce a
> specific code provision . . . such as § 524. Thus, § 105 does not itself create
> a private right of action, but a court may invoke § 105(a) "if the equitable
> remedy utilized is demonstrably necessary to preserve a right elsewhere
> provided in the Code," . . . so long as the court acts consistent with the Code
> and does not alter the Code's distribution of other substantive rights  . . . .

Bessette, 230 F.3d at 444-45 (quoting In re Ludlow Hospital Society, Inc., 124 F.3d 22, 28 (1st

Cir. 1997) and citing In re SPM Mfg. Corp., 984 F.2d 1305, 1311 (1st Cir. 1993) and Chiasson v.

J. Louis Matherne & Assocs. (In re Oxford Management), 4 F.3d 1329, 1334 (5th Cir. 1993)).

The court reversed the bankruptcy court holding that the debtor's sole remedy was a contempt

proceeding for violation of the §524 statutory injunction and remanded the case for the

bankruptcy court to consider employing §105(a) to enforce §524 on behalf of the debtor and the

putative class.  Bessette, 230 F.3d at 446.

---

[21]    The Bessette court referred to Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080 (1975) as
the decision setting forth the applicable legal test on the issue.  Last year, in Wisniewski, 510
F.3d at 299, a panel of the Third Circuit Court of Appeals suggested that Cort v. Ash has been
superseded by later Supreme Court decisions and that the current test for determining if a federal
statute includes an implied private right of action is set forth in Alexander v. Sandoval, 532 U.S.
275, 121 S.Ct. 1511 (2001).  Wisniewski, 510 F.3d at 299-301.

Less than one month after Bessette was decided, in Pertuso v. Ford Motor Credit Co., 233

F.3d 417 (6th Cir. 2000), the Sixth Circuit Court of Appeals, faced the same issue and reached a

different result.  The debtor in Pertuso also filed a class action alleging that the defendant-

creditor routinely collected money from debtors on account of discharged debts without

complying with the reaffirmation procedures of §524.  In Pertuso, however, the court reached the

"private right of action" issue, holding that no such right exists to enforce §524.  The court also

rejected the proposition that violations of §524 may be remedied through §105(a), reasoning that

a court cannot "legislate to add" to the "set of remedies fixed by Congress."  Pertuso, 233 F.3d at

423.

The next appellate decision was Cox v. Zale Delaware, Inc., 239 F.3d 910 (7th Cir.

2001).  Cox, too, involved a class action seeking to remedy alleged violations of the

reaffirmation provisions of 11 U.S.C. §524.  Although the court employed a different rationale,[22]

---

[22]      The Cox court read Pertuso as being based on the theory that in §524, Congress
did not enact an express private remedy (as it did in §362) and that the court must be reluctant to
imply private rights of action in federal statutes.  The Cox court disagreed with that rationale, at
least in a case in which it understood the plaintiff to be seeking only injunctive and not monetary
relief:

> The private rights of action that the Court is reluctant to read into federal
> statutes are rights to obtain damages for statutory violations remediable by
> public agencies. Cox is not seeking damages, and section 524(c) is
> enforceable only by private parties. A statute regulating purely private rights
> that makes a contract void makes the contract rescindable by a party to it,
> especially when the other party to the contract is trying to enforce it, so that
> the contract's illegality is interposed by way of defense, rather than as the
> basis for an independent suit.  If a statute declaring a type of contract
> unenforceable does anything, it creates a defense to a suit to enforce such a
> contract.

Cox, 239 F.3d at 913-14 (citation omitted).  Thus, the court viewed the debtor's action as one for
rescission of the reaffirmation agreement and it appears that it may have found the action viable

it agreed with the Pertuso court and held that there is no private right of action under §524.  The

court did not discuss §105(a) as an alternative basis for the action, but appears to have implicitly

rejected that theory in holding that "a suit for violation of section 524(c) can be brought only as a

contempt action under section 524(a)(2)."  Cox, 239 F.3d at 917.

    Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir. 2002) involved another class

action asserting claims for violation of 11 U.S.C. §524.  In Walls, the Ninth Circuit Court of

Appeals followed Pertuso and held that there is no private right of action under §524, that

§105(a) does not provide an independent basis for enforcement of the §524 statutory injunction,

and that the sole remedy for a violation of §524 is contempt.  Walls, 276 F.3d at 507-10.

    The Third Circuit Court of Appeals weighed in on the subject of private rights of action

under the Bankruptcy Code in Joubert, 411 F.3d 452.  Unlike Bessette, Pertuso, Cox and Walls,

Joubert did not involve a claim for violation of a chapter 7 discharge, although Joubert, too, was

brought as a class action.  The debtor in Joubert asserted that the defendant mortgagee had a

practice of assessing post-petition, pre-confirmation attorney's fees in chapter 13 cases in

violation of 11 U.S.C. §506(b).  The debtor sought damages and attorney's fees to remedy what

she perceived as systemic, unlawful conduct.  The Court of Appeals affirmed the dismissal of the

action, holding that there is no private right of action under §506(b).  The court also held that

§105(a) "does not afford debtors a private cause of action to remedy alleged violations of §

506(b)."  Joubert, 411 F.3d at 457.  In reaching the latter conclusion, the court cited Pertuso and

Walls and stated: "We agree with the reasoning of these cases, and see no reason why the rule

---

had it not concluded that the remedial scheme in §524 rendered contempt of the statutory
injunction the exclusive remedy.  Id. at 914-15.

should be different for actions asserted under § 506(b) rather than § 524." Id. at 456.

After Joubert, the question is whether there is any reason "why the rule should be different" under §1327(a) than under §506(b) and §524.


**4.  section 1327(a) is distinguishable from the Code sections analyzed under prior case law**

Walls and Pertuso, the §524 rulings endorsed by our Court of Appeals, instruct that where Congress has created a statutory injunction (inherently enforceable by contempt) and has not provided any express remedies to supplement the contempt remedy, contempt is sole remedy available for violation of the statutory injunction.[23] Use of §105(a) is not necessary or appropriate because Congress has already provided a remedy for violation of the §524 discharge injunction and there is no reason to believe that the Congressional intent would be undermined if debtors are required to invoke the contempt remedy already embedded in §524.

The rationale expressed for the holding that violations of the §524 discharge injunction are not remediable by §105(a) does not apply to §1327(a). Certainly, §524 and 1327(a) have certain similarities. Both provisions play a fundamental role in the Code's scheme of providing financial relief to debtors who successfully complete their bankruptcy cases under chapters 7 and 13. Both provisions restrict the rights and remedies of the debtor's creditors based on the entry of a court order (the discharge order or the confirmation order). However, there is a critical

---

[23]    In this respect, §524 stands in stark contrast to §362, which creates an injunction (the automatic stay) and an express private right of action. See 11 U.S.C. §362(a), (k). Also, as I observed in Padilla, 365 B.R. at 503, for cases filed on or after October 17, 2005, 11 U.S.C. § 524(i), added to the Code by BAPCPA, provides an express remedy for certain types of §1327(a) violations. Section 524(i) provides that, in certain circumstances, a creditor's failure to credit payments received under a confirmed plan in the manner required by the plan, "shall constitute a violation of an injunction under [§ 524(a)(2)]." 11 U.S.C. §524(i).

difference between the provisions. Section 524 includes a statutory injunction.[24] Section 1327(a) does not. Thus, §524 can be enforced by contempt proceedings. Section 1327(a) cannot. See Part VI, supra. Section 524, on its face, contains a built-in remedial scheme for enforcement of its substantive command. Section 1327(a) does not. Cf. In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004).[25]

    For similar reasons, §1327(a) is distinguishable from §506(b), the Code provision that was the subject of Joubert. Joubert, and similar cases, were brought by debtors who sought to remedy what they perceived to be systemic creditor conduct in violation of §506(b). Section 506(b) defines the circumstances in which certain charges arising under the debtor's contract with a secured creditor may be allowed as part of the creditor's claim. 4 Collier on Bankruptcy ¶506.04[3], at 506-113 (Alan N. Resnick & Henry J. Sommer eds.,15th rev. ed. 2008) ("Collier on Bankruptcy"). Claims allowance is an integral part of the bankruptcy process. There is an express procedure contemplated by the Bankruptcy Code and procedural rules governing the allowance and disallowance of claims. See 11 U.S.C. §502(b); Fed. R. Bankr. P. 3007, 9014 (governing objections to proofs of claim). Thus, to the extent that a creditor asserts a claim that

_____

[24]    See 11 U.S.C. §524(a)(2), (3) (both subsections stating that a discharge "operates as an injunction").

[25]    In Combustion Engineering, Inc., a decision in which the court found no basis for the exercise of the bankruptcy court's authority under §105(a), the court stated: "When the Bankruptcy Code provides a specified means for a debtor to obtain a specific form of equitable relief, those standards and procedures must be observed." 391 F.3d at 236 (citing In re Fesco Plastics Corp., 996 F.2d 152, 154-55 (7th Cir. 1993). The holding that §524's contempt remedy is the exclusive remedy available to debtors is consistent with Combustion Engineering. The relevant point here is §1327 lacks the specified means for the debtor to obtain relief that is embedded in §524.

is inconsistent with §506(b), Congress has provided a remedy in the Code in the form of an objection to the creditor's proof of claim, just as the contempt remedy exists to enforce the §524 discharge injunction.  See In re Patrick, 344 B.R. at 59.  As with §524, there is no reason to believe that the Congressional intent would be undermined if debtors are required to invoke the claims allowance process to vindicate their rights under §506(b).[26]  Unlike §506(b), section 1327(a) is not linked to another Code provision and procedural rules that establish a specific process to enforce its substantive command.  This difference between §1327(a) and §506 leads me to conclude that Joubert is distinguishable and does not control here.

In the absence of binding precedent, I consider the merits of the proposition that §1327(a) is enforceable through §105(a).

---

[26]    This conclusion is reinforced when one considers the underlying nature of the claims raised by the debtor in Joubert and in similar cases, such as Henthorn v. GMAC Mortgage Corp. (In re Henthorn), 299 B.R. 351 (E.D. Pa. 2003) and Willis v. Chase Manhattan Mortg. Corp., 2001 WL 1079547 (E.D. Pa. Sept. 14, 2001).  At bottom, the debtors in these cases asserted that the defendant-creditor was committing a tortious act – in a sense, a species of abuse of the court process  –  by systematically filing invalid bankruptcy claims.  See Henthorn, 299 B.R. at 352 (same conduct allegedly giving rise to violation of §506(b) also alleged to have violated federal debt collection law and state unfair trade practices law).  It is not surprising that courts have been reluctant to find that in enacting §506(b), a Code provision that facilitates the administration of bankruptcy cases by providing a rule of decision in connection with the allowance of bankruptcy claims, Congress intended to create a private remedy for alleged abuses of the bankruptcy system.  See generally Wisniewski, 510 F.3d at 301 (quoting Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh, 382 F.3d 412, 421 (3d Cir. 2004) ("for an implied right of action to exist, a statute must manifest Congress's intent to create (1) a personal right, and (2) a private remedy").

### 5.  enforcement of §1327(a) through 11 U.S.C. §105(a)

Prior to confirmation of a chapter 13 plan, everything that occurs in a chapter 13 case  is

designed to funnel the financial rehabilitation process toward the confirmation hearing.

Confirmation of the chapter 13 plan is the raison d'être of the chapter 13 financial rehabilitation

process.  As stated above, if the debtor's proposed plan is confirmed, it becomes a court-

validated contract among the debtor and his or her creditors that restructures their prepetition

relationships.  The very essence of any contract is that it creates obligations that are judicially

enforceable, generally through the award of compensatory damages and, sometimes, equitable

relief.[27]  See Restatement (Second) of Contracts, §345, comment b. (Lexis 2008); id. §§359-60

The need for a confirmed plan to be enforceable is intrinsic to the chapter 13

rehabilitation process.  Otherwise, the confirmed plan would be a scrap of paper (or perhaps

more accurately in today's digital age, a collection of electronic impulses) that creditors could

disregard with impunity.  Given the role of the confirmed plan in the chapter 13 system, the

principle that a confirmed chapter 13 plan must be enforceable requires no extended or elaborate

justification.  It is difficult to conceive how the chapter 13 system could function if confirmed

chapter 13 plans were not judicially enforceable.  Accord, In re Ryerson, 2006 WL 3804675

(Bankr. M.D. Fla. November 20, 2006).

The principle that confirmed plans are enforceable is manifested in 11 U.S.C. §1327(a),

which declares unequivocally that the terms of the confirmed plan "bind the debtor and each

creditor."  Id.  However, §1327(a) contains no specific enforcement mechanism.  This is

---

[27]      Of course, in general, the expectation in our society is that parties to a contract
will perform their obligations without judicial oversight or intervention. Courts become involved
only to resolve disputes.

precisely why it is appropriate that 11 U.S.C. §105(a) be invoked to enforce §1327(a).

The function of §105(a) is best understood in the context of the bankruptcy courts' historic role as "equitable tribunals that apply equitable principles in the administration of bankruptcy proceedings." In re Official Committee of Unsecured Creditors of Cybergenics Corp., 330 F.3d 548, 567 (3d Cir. 2003); accord, United States v. Energy Resources, Inc., 495 U.S. 545, 549, 110 S.Ct. 2139, 2142 (1990). Our Court of Appeals has described §105(a) as the codification of the general equitable powers of the bankruptcy courts. In re SubMicron Systems Corp., 432 F.3d 448, 455 n.6 (3d Cir. 2006). The bankruptcy courts' equitable powers provide broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates, see In re Kaiser Aluminum Corp., 456 F.3d 328, 340 (3d Cir. 2006), and include the power to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the Code was designed to obtain." Id. (quoting Cybergenics, 330 F.3d at 568). Stated perhaps somewhat more narrowly, the core function of §105(a) is to provide the court with the "power . . . to implement" the substantive command of other provisions of the Code. In re Owens Corning, 419 F.3d 195, 209 n.14 (3d Cir. 2005), cert. denied, 547 U.S. 1123, 126 S.Ct. 1910 (2006) (quoting In re Kmart Corp., 359 F.3d 866, 871 (7th Cir. 2004)).[28]

Of course, there are limits to the equitable powers of the bankruptcy court and many

---

[28]    There are commentators who question the view that the bankruptcy court is "court of equity." See Adam J. Levitin, Toward a Federal Common Law of Bankruptcy: Judicial Lawmaking in a Statutory Regime, 80 Am. Bankr. L.J. 1, 23-25 (2006); Ahart, 79 Am. Bankr. L.J. at 11-28. However, it is axiomatic that I base my decision on the Court of Appeals' articulation of the proper role of the bankruptcy court. See, e.g., In re Sun Healthcare Group, Inc., 2002 WL 31155179, *8 n.5 (D. Del. Sept. 27, 2007).

reported decisions discuss those limitations.  Almost twenty (20) years ago, the Court of Appeals

observed that

> Section 105(a) authorizes the bankruptcy court . . .  to fashion such orders as are
> required to further the substantive provisions of the Code. Section 105(a) gives the
> court general equitable powers, but only insofar as those powers are applied in a
> manner consistent with the Code.

In re Morristown & Erie R. Co., 885 F.2d 98, 100 (3d Cir. 1989) (citations omitted).  Many

courts have repeated this cautionary principle,[29] often with the admonition that §105(a) does not

authorize bankruptcy courts to act as a "a roving commission to do equity."  E.g., Schwartz v.

Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 680 (2d Cir. N.Y.

2003) (quoted in Combustion Engineering, 391 F.3d at 236).  However, such statements, true as

they may be, are so general that they do not assist greatly in differentiating between the

appropriate and inappropriate use of §105(a).  Some further guidance can be found in

Combustion Engineering, which reiterated the statement previously made by many other courts

– that §105(a) cannot be used to create new, substantive rights not found in the Code or to

disregard the clear meaning of other Code provisions.  See Combustion Engineering, 391 F.3d at

236 ; see also 2 Collier on Bankruptcy ¶105.01[1], at 105-6 (suggesting that exercise of §105

power must "be tied to another Bankruptcy Code section and not merely to a general bankruptcy

---

[29]        E.g., Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203,
211 (3d Cir. 2000); IRS v. Kaplan (In re Kaplan), 104 F.3d 589, 597 (3d Cir. 1997); Southern
Ry. Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3d Cir. 1985); see generally Norwest Bank
Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963 (1988) (court's equitable powers can
only be exercised within the confines of the Bankruptcy Code).

concept or objective") ("<u>Collier on Bankruptcy</u>").[30]

The essence of the boundary of §105(a) equity power is that the provision cannot provide the basis for requested relief that would either (1) create a new substantive right or (2) conflict with the another provision of the Bankruptcy Code.  In this Circuit, application of the first of the two limiting principles has caused courts to hold that §105(a) does not support:

- granting an unsecured creditor secured status as an equitable remedy for its failure to receive notice of a judicial sale;[31]

- the entry of an order compelling a party to take action which it was not obligated to take either under the terms of its prepetition contract or any specific provision of the Bankruptcy Code; and [32]

- the entry of an order compelling the IRS to reallocate the payments made by a non-debtor to credit them against trust fund taxes, rather than other taxes owed by the non-debtor.[33]

Application of the second limiting principle has resulted in the denial of

- a request under §105(a) for confirmation of a plan containing a third party release in conflict with 11 U.S.C. §524(e);[34] and

- confirmation of a plan containing a "channeling injunction" without satisfying the requirements of 11 U.S.C. §524(g)(4).[35]

---

[30]    This is not to suggest that the bankruptcy court can use its §105(a) powers to override the mandates of applicable nonbankruptcy law.  It cannot except to the extent that the powers are exercised to further a Code provision that overrides nonbankruptcy law.  <u>See</u> 2 <u>Collier on Bankruptcy</u> ¶ 105.01[1] at 105-7 to 105-8.

[31]    <u>Southern Ry. Co. v. Johnson Bronze Co.</u>, 758 F.2d at 141.

[32]    <u>Morristown & Erie R. Co.</u>, 885 F.2d at 100-01.

[33]     <u>In re Kaplan</u>, 104 F.3d at 589.

[34]    <u>Continental Airlines</u>, 203 F.3d at 211-14.

[35]    <u>Combustion Engineering</u>, 391 F.3d at 236-37.

With this framework in mind, I return to the First Circuit's decision in <u>Bessette</u>.  There, the First Circuit correctly stated the operative legal principle: that <u>§105 does not itself create a private right of action, but a court may invoke §105(a) if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code, so long as the result is consistent with the Code and does not alter other substantive rights set forth in the Code.  See</u> <u>Bessette</u>, 230 F.3d at 444-45.  In this Circuit, after <u>Joubert</u>, one would simply say that the First Circuit in <u>Bessette</u> correctly stated the law but simply misapplied it when it concluded that violations of §524(a) are remediable through §105(a).  The error in the <u>Bessette</u> court's analysis was that the court did not perceive the §524 contempt remedy to be the exclusive statutory remedy intended by Congress for violations of the discharge injunction and therefore, failed to recognize that use of §105(a) as an additional remedy is inconsistent with the Code.

In applying the principles governing the proper scope of §105(a) to this adversary proceeding, I conclude that the issuance of an order to enforce §1327(a) falls squarely within purview of the bankruptcy court's power.  Such an order is consistent within the express mandate of §105(a): it is "necessary and appropriate to carry out the provisions of this title."  As an order issued to carry out the express terms of another Code provision (<u>i.e.</u>, §1327(a)), it does not run afoul of the principle that §105(a) orders may not override other Code provisions.  It does not purport to supplement any exclusive procedure already in place for the enforcement of §1327(a) (as no such express statutory enforcement mechanism exists).  Nor does it create a new right not already extant in the Code or conflict with substance of another Code provision.

These are all convincing reasons to permit use of §105(a) to enforce violations of

§1327(a).

### 6. pre-Code practice

Finally, I find further support for the conclusion that §1327(a) may be enforced through §105(a) in pre-Code practice under chapter XIII of the prior Bankruptcy Act.

The prior Bankruptcy Act provided two (2) main sources for the bankruptcy court's authority to enforce the terms of a confirmation order. Section 657 of the Bankruptcy Act (formerly codified at 11 U.S.C. §1057), which is almost identical to current 11 U.S.C. §1327(a), provided that:

> Upon confirmation of a plan, the plan and its provisions shall be binding upon the debtor and upon all creditors of debtor, whether or not they are affected by the plan or have accepted it or have filed their claims and whether or not their claims have been scheduled or allowed or are allowable.

Also relevant is §2a(15) of the prior Act, 11 U.S.C. §11(a)(15) (repealed). Section 2a(15) is quite similar to and is considered §105(a)'s direct antecedent. See S. Rep. No. 95-989, at 51 (1978); H.R. Rep. No. 95-595, at 342 (1978). Section 2a(15) invested the bankruptcy court with the power to:

> Make such orders, issue such process, and enter such judgments, in addition to these specifically provided for, as may be necessary for the enforcement of the provisions of this Act: Provided, however, That an injunction to restrain a court may be issued by the judge only.

Thus, structurally, the current Bankruptcy Code mirrors the prior Act. Both bankruptcy statutes provide that confirmed plans are binding and vest the bankruptcy court with authority to enforce the terms of the statute. Not surprisingly, Chapters X and XI of the prior Act included provisions almost identical to §657. See former Bankruptcy Act §224(1), 11 U.S.C. §624(1)

(repealed); former Bankruptcy Act §367(1); 11 U.S.C. §767(1) (repealed).

There do not appear to be a multitude of reported decisions under the Act on the subject,
but there are cases in which courts granted post-confirmation relief to enforce the terms of
confirmed chapter XIII plan.[36]  Similarly, courts granted relief under the comparable provisions
of chapter XI of the prior Act.[37]  My research has not revealed any reported cases which held that
the bankruptcy court lacked the power to issue orders to enforce the provisions of a plan
confirmed under either chapter X, XI or XIII.

This is not intended to be a comprehensive discussion and it must be acknowledged that
there are differences between the current Code and the prior Act.  The point here is that the
issuance of bankruptcy court orders to enforce the terms of a confirmed plan was not a novel
proposition when the Bankruptcy Code was enacted in 1978 and Congress took no action to
restrict the power of the bankruptcy court on this subject.[38]  Thus, consideration of pre-Code

---

[36]     See In re Phillips, 18 B.R. 776 (Bankr. S.D. Ohio, 1982) (granting equitable relief
to the debtor to enforce completed chapter XIII plan); In re Person, 1 B.C.D. 642 (Bankr. E.D.
Va. 1975); see also In re Hawks, 471 F.2d 305 (4th Cir. 1973);  In re Shelor, 391 F.Supp. 384
(W.D. Va. 1975).

[37]     See Adams/Fredrickson Associates, Inc. v. U.S., 1977 WL 1120 (D. Me. Mar. 29,
1977); accord, In re Stewart Thomas, Inc., 1979 WL 1291 (W.D. Va. Feb. 12, 1979); Eastern
Freight Ways, Inc. v. Local Union No. 707, 300 F.Supp. 1289 (S.D.N.Y. 1969), aff'd, 422 F.2d
351 (2d Cir. 1970).

[38]     There were a number of provisions in the prior Act, apart from those cited above,
that overlapped §2a(15) and provided authority for the bankruptcy court to issue an order to
restrain or otherwise remedy conduct inconsistent with the terms of a confirmed plan.  See
Bankruptcy Act §116(4), 11 U.S.C. §516(4) (repealed) (in chapter X, power to enjoin certain
creditor collection action until entry of final decree); Bankruptcy Act §228, 11 U.S.C. §628
(repealed) (in chapter X, power to issue injunction with final decree); Bankruptcy Act §314, 11
U.S.C. §714 (repealed) (in chapter XI, power to enjoin certain creditor collection action until

practice suggests that, in enacting the Bankruptcy Code, Congress intended to continue to permit

bankruptcy courts to issue orders to enforce the terms of a confirmed plan that bind the parties

under 11 U.S.C. §1327(a).  See generally Dewsnup v. Timm, 502 U.S. 410, 417, 112 S.Ct. 773,

778 (1992) (ambiguous statutory text held not to reflect Congressional intent to alter pre-Code

rule that generally, liens pass through bankruptcy unaffected).

### 7.  summary

Based on the text of 11 U.S.C. §105(a), the structure of the Code and historic practice, I

conclude that Congress intended that bankruptcy courts may grant relief under §105(a) to remedy

a violation of and enforce the terms of §1327(a).  Thus, a remedy exists for the violation of

§1327(a) that has been well pleaded in the Amended Complaint.

---

entry of final decree); Bankruptcy Act §372, 11 U.S.C. §772 (repealed) (in chapter XI,  power to
issue injunction with final decree).

These provisions were either modified or not carried forward into the current
statute.  However, the same subject matter is addressed amply in other provisions of the Code,
such as 11 U.S.C. §§105(a) and 362(a).  I am unaware of anything in the legislative history
suggesting that the elimination or modification of the overlapping provisions cited above was
intended to circumscribe the powers of the bankruptcy court.  I ascribe the textual differences
between the former and current statute as non-substantive arising from a transition to more
modern, economical statutory drafting techniques.

### VIII.  CLAIM  NO. 6 FAILS TO STATE A CLAIM BECAUSE NEITHER THE CONFIRMED PLAN, THE BANKRUPTCY CODE, THE RULES OF COURT NOR THE PARTIES' CONTRACT IMPOSED A DUTY ON GMACM TO GIVE THE DEBTOR NOTICE OR OBTAIN COURT APPROVAL OF  POSTPETITION LEGAL EXPENSES GMACM  ALLEGEDLY INCURRED DURING THE PENDENCY OF THE CASE

**A.  Introduction**

Under a plan that treats a secured claim under §1322(b)(5), a debtor is obliged to provide for "the maintenance of payments while the case is pending, in addition to making plan payments sufficient to cure the prepetition delinquency."  Id.; see, e.g., Padilla, 365 B.R. at 501.  In other words, going forward from the filing of the case, the debtor must perform his or her contractual obligations as they fall due postpetition, while simultaneously making a separate stream of payments to the chapter 13 trustee to cure the prepetition delinquency.[39]  As a result of this feature, a chapter 13 case involving a §1322(b)(5) plan frequently has a more dynamic quality compared to a traditional court cases.

In a traditional court case, the court may examine historical events, label the parties' conduct and then fix the rights of the parties, often by entering a judgment awarding monetary damages to one party.[40]  In a chapter 13 case involving a §1322(b)(5) plan, the rights and

---

[39]    In many jurisdictions, the practice is that the debtor makes a single plan payment to the Trustee who then makes payments to the secured creditor on account of both the prepetition delinquency and the postpetition "maintenance of payments" obligation.  See  In re Lopez, 372 B.R. 40, 46-47 (B.A.P. 9th Cir. 2007).  The issue whether Claim No. 6 states a claim does not turn on whether the debtor or the Trustee serves as the disbursing agent for the postpetition payments made under "maintenance of payments."

[40]    For example, in a contract dispute, after considering evidence regarding the parties' negotiations and the parties' performance, the court may resolve disputes about the meaning of the contract and determine which party, if any, breached the contract.  If there was a breach of contract, the court might then provide a remedy, typically the award of monetary damages to the aggrieved party.  Chapter 7 cases frequently follow a similar pattern in that a

obligations of the parties may change over the period of time in which the financial rehabilitation

process is under the supervision of the bankruptcy court.  In particular, the debtor's payment

obligation to the secured creditor may not remain fixed for a variety of reasons, such as: (1)

changes in escrow requirements for taxes and insurance; (2) interest rate adjustment in variable

rate mortgages; (3) the assessment of legal expenses incurred postpetition that the creditor may

be entitled to pass on to the debtor under the terms of the parties' agreement.[41]  The potentially

variable nature of the postpetition contractual obligations creates the dynamism referred to

above.

Except for the general statement found in §1322(b)(5) that the debtor has the duty to

"maintain payments," the provisions of the Bankruptcy Code and the Federal Rules of

Bankruptcy Procedure do not address directly the mechanics of the debtor's postpetition

contractual performance within the chapter 13 rehabilitation environment.  In addition, as I

observed in my prior opinion in this case:

> In some cases . . . mortgage lenders wait until after the conclusion of the
> bankruptcy case to assert that other amounts fell due during the pendency of
> the bankruptcy case. In such cases, the mortgage lender may assert, only after
> the conclusion of the bankruptcy case, that . . .  the [debtor's postpetition
> payment obligation] was not fully paid during the pendency of the case and
> [therefore,] the debtor did not cure the [p]repetition [d]elinquency and

---

chapter 7 trustee may engage in litigation either to collect estate assets or to set aside transfers in
order to augment the estate or to object to claims filed against the estate.  The process results in
the raising of an estate and the distribution of the estate to creditors.  The process just described
results in a static end point: the rights of the parties are fixed by the court process.

[41]     This adversary proceeding involves only the last of the examples cited in the text.
The remainder of the discussion of Claim No. 6 will concentrate on the issues arising when a
secured creditor assesses postpetition legal expenses on the mortgage account during the
pendency of a chapter 13 case.

reinstate the subject mortgage.

> The practice of some mortgage lenders of waiting until after the completion of a chapter 13 bankruptcy case to demand payment of some type of [p]ostpetition [o]bligation implicates a variety of legal issues, including: . . . whether the creditor has the obligation to provide some notice during the pendency of the bankruptcy case of the [p]ostpetition [o]bligation; and . . . whether such conduct violates the terms of the confirmed chapter 13 plan or a specific provision of the Bankruptcy Code.

Padilla, 365 B.R. at 493-94 (footnote omitted).  It is the absence of established court procedures addressing the "maintenance of payments" requirement of §1322(b)(5) combined with certain practices in the mortgage servicing industry that gives rise to the legal dispute embodied in Claim No. 6.

In Claim No. 6, the Debtor asserts that the Disputed Charges were incurred postpetition and that GMACM's demand for payment of the Disputed Charges after the completion of the chapter 13 plan violated the Confirmed Plan and 11 U.S.C. §1327(a).  For Claim No. 6 to be viable, the Debtor must establish that:

1. GMACM had a legal duty to either: (a) obtain court approval of postpetition legal expenses or, (b) at a minimum, give the Debtor notice during the pendency of the case that charges were incurred postpetition;

2. GMACM did not obtain court approval or to give notice that additional charges were incurred postpetition during the pendency of the case;

3. GMACM's failure either constituted a waiver of the right to collect the charges or was otherwise inconsistent with the chapter 13 plan, thereby rendering its subsequent demand for payment a violation of 11 U.S.C. §1327(a).

Step 2 is a question of fact, which I will assume to be true for present purposes.  Steps 1 and 3 are issues of law.

The flaw in Claim No. 6 is in step 1.

In this case, the Confirmed Plan did not include any provisions that imposed an obligation on GMACM to give notice or make demand for payment of postpetition legal expenses incurred during the pendency of the case.  The subject is not mentioned in the Confirmed Plan; the Confirmed Plan states only that the Debtor "shall resume making regular monthly mortgage payments . . .  according to contractual terms."  (Confirmed Plan, ¶ 2(b)(1))  Thus, if GMACM had a legal duty, it must be derived from a source other than the express terms of the Confirmed Plan.

In the absence of a provision of a confirmed plan imposing procedural obligations on a secured creditor with respect to assessment or collection of legal expenses incurred postpetition, there are several potential sources of law that might regulate GMACM's right to defer notice and collection of legal expenses: (1) the Bankruptcy Code, (2) the rules of court, and (3) the GMACM Mortgage.

As elaborated below, I conclude that neither the Bankruptcy Code, the rules of court nor the GMACM Mortgage imposed a duty on GMACM, incorporated into the Confirmed Plan, to seek court approval or to give notice to the Debtor or the Trustee of GMACM's assessment of postpetition legal expenses against the Debtor's mortgage account.  Absent a breach of a legal duty incorporated into or traceable to the Confirmed Plan, there can be no violation of §1327(a).  Thus, based on the facts alleged, Claim No. 6 fails to state a claim and will be dismissed.

**B.  Case Law Supporting the Debtor's Position**

There is a line of cases that support the proposition that a creditor secured by a residential mortgage must obtain court approval in order to assess legal expenses incurred postpetition on a

chapter 13 debtor's mortgage account.  In re Padilla, 379 B.R. at 654-59; In re Sanchez, 372 B.R. 289 (Bankr. S.D. Tex. 2007); In re Jones, 366 B.R. 584 (Bankr. E.D. La. 2007); In re Madison, 337 B.R. 99 (Bankr. N.D. Miss. 2006); Noletto v. NationsBanc Mortg. Corp. (In re Noletto), 281 B.R. 36, 47 (Bankr. S.D. Ala. 2000);  In re Powe, 278 B.R. 539 (Bankr. S.D. Ala. 2002); In re Tate, 253 B.R. 653 (Bankr. W.D.N.C. 2000).  For ease of reference, I will refer to these cases as the "Jones Cases."

In varying degrees, the Jones Cases rely on 11 U.S.C. §506(b),[42] Fed. R. Bankr. P. 2016[43] and equitable and due process concerns as the basis for the holding that postpetition legal expenses added to a chapter 13 debtor's mortgage account must be disclosed and, in the view of some courts, formally allowed.

One might synthesize the reasoning of these decisions as follows:

- Legal expenses incurred **postpetition/preconfirmation** may be included as part of a secured creditor's claim under 11 U.S.C. §506(b) and, as such, must

---

[42]    11 U.S.C. §506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

[43]    Rule 2016(a) requires that any entity seeking "compensation for services, or reimbursement of necessary expenses from the estate" must file a detailed application with the court.  The universal practice is that any professional seeking compensation and reimbursement from the bankruptcy estate for services provided  to the estate on behalf of a debtor or a trustee is subject to this rule.  It is less clear whether a creditor's attorney or other professional asserting a right to compensation or reimbursement of expenses payable by the estate is also subject to the rule.  See Part VIII.B.4, infra.

-45-

be allowed by the court;[44] allowance under §506(b) triggers the due process requirements of notice and opportunity to be heard.[45]

- Legal expenses incurred **postpetition/postconfirmation** are not governed by 11 U.S.C. §506(b),[46] but nonetheless must be disclosed to the debtor because such expenses may be treated in the debtor's chapter 13 plan, making it "imperative" as a matter of case administration that the secured creditor inform the debtor when fees and charges are being assessed against their accounts.[47]

The rationale for the conclusion that, during the pendency of a chapter 13 case, it is unlawful for the secured creditor to assess additional charges on the debtor's mortgage account without any disclosure is exemplified by the following passage in Jones:

> Creditors should not be able to assess fees to the account of a person in bankruptcy without the person's knowledge. A bankruptcy case's purpose is to allow a debtor to get out of financial trouble. At discharge, a debtor ought to be able to expect he or she has brought his or her secured debts current and wiped out all unsecured debts

---

[44]    E.g., Jones, 366 B.R. at 594.

[45]    Tate, 253 B.R. at 665. These due process concerns caused the Tate court to hold that the allowance procedure set forth in Fed. R. Bankr. P. 2016(a) must be followed. Id. at 665-666; accord, In re Gifford, 256 B.R. 661, 662 n.2 (Bankr. D. Conn. 2000); see also In re Payne, 2008 WL 1961489, *8 (Bankr. D. Kan. May 6, 2008); In re Plant, 288 B.R. 635, 643 (Bankr. D. Mass. 2003). Other courts have concluded that these concerns can be satisfied through less formal, less expensive procedures. See Madison, 337 B.R. at 103-04 (request for allowance may be made through a fee application under Fed. R. Bankr. P. 2016 or in a proof of claim); In re Atwood, 293 B.R. 227, 232 (B.A.P. 9th Cir. 2003) (same); see also In re Placidi, 2008 WL 474239 (Bankr. M.D. Pa. Feb. 21, 2008) (agreeing with Atwood court and also suggesting that fees may requested as part of motion for relief under 11 U.S.C. §362).

[46]    There is a consensus in the courts that 11 U.S.C. §506(b) has no applicability after the confirmation of a debtor's plan. See Rake v. Wade, 508 U.S. 464, 468, 113 S.Ct. 2187, 2190 (1993); see also In re Brooks, 2007 WL 1114091, *5 (Bankr. D.N.J. April 12, 2007).

[47]    Jones, 366 B.R. at 595-96; accord, Powe, 278 B.R. at 553.

not paid through a plan. <u>Undisclosed fees prevent a debtor from paying the fees in his</u>
<u>or her plan-an option that should not be lost simply because a creditor chooses to not</u>
<u>list the fee and expects to collect it later.</u>

Post confirmation, debtors have at least three options regarding the payment of
accruing post confirmation charges. The charges can be paid through a modified plan,
deferred until completion of the case, or voluntarily paid outside of the plan.[48]
However, in order for a debtor to exercise his choice, the post confirmation fees and
charges must be disclosed. The right to modify a plan for post confirmation defaults
is meaningless if a lender can decide which fees and charges it will disclose and
which it will hide until the case is complete and execution on debtor's collateral can
be accomplished. <u>Post confirmation charges, if not disclosed, could also thwart the</u>
<u>real purpose of a bankruptcy case. A debtor that completes his plan by paying off his</u>
<u>lender's entire arrearage and postpetition installments may find himself in foreclosure</u>
<u>the day after a discharge is granted, based on unpaid and undisclosed post</u>
<u>confirmation charges and fees. This result is clearly at odds with the notion of</u>
<u>providing a successful debtor a fresh start.</u>

<u>Id.</u> at 596 (footnote omitted) (emphasis added).[49]

From a policy perspective, a rational, and perhaps even compelling case, can be made that

the bankruptcy system should impose disclosure and/or other procedural requirements on a

secured creditor's right to assess legal expenses arising postpetition in a case in which the

---

[48]      In my view, the quoted sentence is another instance in which courts have
misapplied the term "outside the plan." Because §1322(b)(5) contemplates that the debtor will
maintain his or her postpetition contractual obligations as they fall due, any payments made as
part of the process of effecting a cure is a payment contemplated by the plan and therefore, is
made "pursuant to", "in," or "under" the Plan. <u>See, e.g.,</u> <u>In re Orawsky</u>, 387 B.R. 128, 138
(Bankr. E.D. Pa. 2008).

[49]      A similar sentiment was expressed in <u>Noletto</u>, 281 B.R. at 47:

Fees which are not disclosed at all, fees which are not properly claimed with
specificity, or are not included in the arrearage claim to be paid through the
plan if the plan so provides, are per se unreasonable because they are
improperly charged. A postpetition/preconfirmation fee is not owed until
properly claimed.

creditor's claim is being treated and cured in a confirmed chapter 13 plan through 11 U.S.C.

§1322(b)(5).  The debtor's performance of the postpetition contractual obligations takes place

within the context of a court supervised financial rehabilitation process.  Any assessments by the

secured creditor for legal expenses incurred postpetition constitute part of the amount necessary

to cure the default and directly impact the debtor's prospects for a successful chapter 13

rehabilitation.  The failure to notify the debtor can have pernicious consequences.[50]

Nevertheless, whatever merits of the policy arguments may have, I find no source of law

that imposes a requirement that a secured creditor provide a debtor with notice of postpetition

legal expenses incurred by the creditor and chargeable to the debtor under the mortgage being

treated under §1322(b)(5) of the debtor's chapter 13 plan.  In short, I am not persuaded that the

policy argument is grounded sufficiently in either the Bankruptcy Code or the rules of court to

afford it the force of law in this case.

---

[50]    Generally speaking, a secured creditor's deferral of collection efforts with respect
to "shifted" legal expenses frequently may work to the benefit of a homeowner by providing
additional time for payment.  In the bankruptcy context, the deferral of notice and demand for
payment of legal expense may work to a debtor's detriment.  The paradigm is the debtor who
paid all of the plan payments and all of the postpetition monthly instalments that fell due during
the case; who was not notified that legal expenses were assessed against the account for some
modest work done in the bankruptcy case; who therefore, believes that the prepetition default
was cured through the chapter 13 plan; whose mortgage account is not treated as reinstated by the
creditor; whose post-discharge monthly payments are returned by the creditor; who may have
been able to work out an arrangement for payment of the legal expenses had he or she been given
notice of them during the bankruptcy case; and who faces renewed foreclosure proceedings
immediately upon emerging from what appeared to be a successful chapter 13 rehabilitation case.
For a disturbing description of the state of mortgage servicing in chapter 13 cases, see In re
Parsely, 384 B.R. 138 (Bankr. S.D. Tex. 2008).

## C.  Sections 506(b) and 1322(e)

As stated above, the holdings in the <u>Jones</u> Cases are grounded in 11 U.S.C. §506(b).
More specifically, the decisions posit that §506(b) is the statutory authority for the assessment of
postpetition legal expenses against the debtor's mortgage account by a secured creditor whose
claim is being treated under §1325(b)(5).

Section 506(b) "governs the allowance of postpetition interest, fees, costs and charges as
part of a secured claim," 4 <u>Collier on Bankruptcy</u> ¶506.04, at 506-101.  The provision permits a
secured creditor to increase the amount of its allowed prepetition secured claim based on
postpetition events, such as the accrual of interest and the incurring of legal expenses that the
underlying contract permits the creditor to "shift" to the debtor.

Section 506 imposes a number of substantive requirements that must be satisfied before
postpetition legal expenses (or interest or costs or other charges) may be allowed as part of a
secured claim.[51]  These requirements have both factual and legal components.  Therefore, it is not
surprising that the §506(b) allowance process involves notice and opportunity to be heard (either
through the filing of a proof of claim or an application or motion, <u>see</u> n.46, <u>supra</u>).

Insofar as the <u>Jones</u> Cases rely on §506(b) as authority for the proposition that a secured

---

[51]      Under section 506(b), postpetition legal expenses may be allowed as part of a
secured creditor's bankruptcy claim if three elements are satisfied: (1) the claim is an
oversecured, allowed secured claim; (2) the fees are reasonable; and (3) the fees are provided for
under the agreement between the parties or by statute. 4 <u>Collier on Bankruptcy</u> ¶ 506.04[3], at
506-113; <u>accord, e.g.</u>, <u>In re Olick</u>, 221 B.R. 146 (Bankr. E.D. Pa. 1998); <u>In re West Chestnut
Realty of Haverford, Inc.</u>, 186 B.R. 612 (Bankr. E.D. Pa. 1995). The courts in <u>Olick</u> and <u>West
Chestnut Realty</u> also stated that the requested attorney's fees under § 506(b) must also be
allowable under state law. Courts differ as to whether, under §506(b), state law or federal law is
applicable to the determination whether an oversecured creditor's contractual entitlement to shift
fees is enforceable. <u>See</u> 4 <u>Collier on Bankruptcy</u> ¶ 506.04[3][a].

creditor must obtain court approval in order to assess legal expenses incurred postpetition on a chapter 13 debtor's mortgage account, I perceive an initial flaw in the analysis. While the flaw is not dispositive in this case, I digress briefly to explain it.

Section 506(b) cannot serve as the universal Bankruptcy Code provision for evaluating whether a secured creditor has a duty to give notice and seek court approval before assessing postpetition legal expenses against the debtor's account because it is not applicable to many, if not most, secured claims that are treated in a plan under §1322(b)(5). Indeed, unless the Code is amended in the future, eventually, §506(b) will never be applicable in a case involving a §1322(b)(5) plan.

Prior to October 22, 1994, §506(b), as construed by the Supreme Court in Rake v. Wade, 508 U.S. at 472, 113 S.Ct. at 2192, was applicable to all secured claims, including prepetition arrrears on a secured claim being cured under §1322(b)(5). In Rake, the Court held that under §506(b), as a matter of federal bankruptcy law and irrespective of state law, a secured creditor is entitled to postpetition interest on the arrears being cured under a plan that provides for the claim under §1322(b)(5).

In 1994, however, Congress added §1322(e) to the Bankruptcy Code. Section 1322(e) has been described as a legislative decision to "overrule" Rake. See 8 Collier on Bankruptcy ¶ 1322.18, at 1322-67. The legislative override of Rake is subject to one limitation. Section 1322(e) applies only to transactions entered into after October 22, 1994. See Pub. L. 103-394, §§702(b)(2)(D) (Oct. 22, 1994).

Section 1322(e) provides that, "notwithstanding" §§506(b), 1322(b)(2) and 1325(a), in a plan which provides for a cure of a default, "the amount necessary to cure the default shall be

determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11

U.S.C. §1322(e). By its very terms, §1322(e) "trumps" §506(b). In re Thompson, 372 B.R. 860,

863 (Bankr. S.D. Ohio 2007). Section 506(b) "has no applicability in the cure situation in which

a debtor is merely keeping the original contract in place and bringing it up to date." In re Gagne,

378 B.R. 439, 443 (Bankr. D.N.H. 2007).[52] "In other words, [the amount necessary to cure a

default through §1322(b)(5)] is the same amount as would be required to cure if the debtor were

not in bankruptcy." In re McMullen, 273 B.R. 558, 564 (Bankr. C.D. Ill. 2001).

The use of §506(b) as the starting point of their analyses suggests that the Jones Cases are

based on a false premise. This detracts from the persuasiveness of the decisions. For two (2)

reasons, however, I do not find this "error," by itself, to be dispositive of the issue before me.

First, this case involves a mortgage transaction that took place in 1988.[53] This renders

§1322(e) inapplicable and §506(b) applicable in the bankruptcy case that is the subject of this

---

[52]    Accord, e.g., Smiriglio v. Hudson United Bank, 98 Fed Appx. 914, 915-16 (3d
Cir. 2004) (non-precedential); Plant, 288 B.R. at 641 (pointing out that although enactment of
§1322(e) may have been intended to override Rake, a decision regarding postpetition interest on
arrears, §1322(e), by its terms extends to attorney's fees and other costs as well). Cf. Ryker v.
Current, 338 B.R. 642, 647-48 (Bankr. D.N.J. 2006) (§506(b), and not §1322(e), is applicable if
plan provides for full payment of claim rather than cure of prepetition default).

[53]    During the briefing of the contested motion to reopen this bankruptcy case,
GMACM attached a copy of the GMACM Mortgage to its Supplemental Memorandum of Law
and the Debtor did not question the authenticity of the document. I then considered the content
of the document in ruling on the Debtor's motion to reopen. See Padilla, 365 B.R. at 495 n.4 &
authorities cited therein. I again consider it appropriate to consider the contents of the GMACM
Mortgage.

adversary proceeding.[54]

Second, and more importantly, the applicability of §506(b), or, alternatively, the primacy of §1322(e) over §506(b) for post-October 22, 1994 mortgages, arguably determines only the source of law – bankruptcy or nonbankruptcy – to be employed in determining whether a creditor has a right to add postpetition interest and legal expenses to the amount necessary to cure a prepetition default.  But the dispute in this case does not turn on whether federal or state law should be applied in evaluating GMACM's entitlement to reimbursement of its postpetition legal expenses.  The pivotal issues here are better characterized as questions of "bankruptcy procedure" and might be framed as follows:

> Is there a requirement that a secured creditor give the debtor (and/or the trustee) notice when postpetition legal expenses have been incurred when a debtor is curing a default through §1322(b)(5) and, if so, does the failure to do so during the pendency of the chapter 13 case effectively waive the right to collect the charges after the conclusion of the bankruptcy case?

Thus, in order to evaluate the legal sufficiency of Claim No. 6, I must continue to evaluate the role that §506(b) plays in a chapter 13 plan that treats a secured claim under §1322(b)(5).

## D.  §506(b), §1322(b)(5) and the ramifications of §1328(a)

Another, perhaps unstated, premise of the Jones Cases is that once §506(b) is applicable in a chapter 13 case, either alone or in conjunction with Fed. R. Bankr. P. 2016(a), it imposes an

---

[54]      I note that the Debtor's bankruptcy schedules state that GMACM was an "oversecured" creditor.  Thus, GMACM meets the threshold requirement under §506(b) for assessing postpetition legal expenses under that section.

obligation on a secured creditor to provide notice and obtain court approval of the assessment of postpetition/preconfirmation legal expenses against the debtor's mortgage account, even if the secured creditor makes no attempt to collect the charges until after the conclusion of the bankruptcy case. Respectfully, I disagree. In my view, this judicial gloss on §506(b) fails to consider the differences between chapter 13 plans that treat secured claims under §1322(b)(5) (a "Cure Plan") and chapter 13 plans that propose to fully satisfy a secured claim under §1325(a)(5) (a "Payoff Plan").

In a Payoff Plan, the debtor proposes to pay off the entire secured claim and is obliged to pay post-confirmation interest as a condition of confirmation. See id. §1325(a)(5)(B)(II). After the completion of the plan, the debtor receives a discharge of the underlying debt. See id. §1328(a). Thus, the interplay among §§1325(a)(5)(B)(II) and 1328(a) supports the conclusion that a secured creditor that fails to augment its prepetition claim by invoking §506(b) during the pendency of the bankruptcy case loses the ability to do so after the conclusion of the bankruptcy case. Further collection efforts are prohibited by the debtor's discharge.

A §1322(b)(5) Cure Plan operates differently and has different legal consequences. The plan serves as extra-contractual vehicle, authorized by federal law, through which a debtor may cure a prepetition default of the parties' agreement. But, there is no discharge of the debt at the conclusion of the bankruptcy case. Id. at §1328(a)(1). The successful completion of the plan serves only to reinstate the prepetition contract between the secured creditor and the debtor. The parties' contract then passes through the bankruptcy case intact.

The survival of the parties' contract after the completion of a Cure Plan and after the entry of the chapter 13 discharge is critical to a proper analysis of the issue. Because there is no

-53-

discharge and the parties' contract passes through the chapter 13 case unaffected, it follows that after the conclusion of the bankruptcy case, the secured creditor may collect all charges lawfully falling due under the contract that were not paid during the pendency of the bankruptcy plan.  For that contractual right to be cut off, there must be a source of authority that imposes some type of procedural deadline in the bankruptcy case.  Section 506(b) does not provide that authority.

Section 506(b) says only, in the passive voice, that there "shall be allowed" to an oversecured creditor, "reasonable fees, costs or charges provided for under the agreement under which such claim arose."[55]  Nothing in the text of §506(b) imposes any time deadlines or states that invocation of §506(b) is mandatory or provides that a secured creditor that does not invoke §506(b) forfeits its right to payment.  Congress appears to have determined that the operation of §1328(a) will determine the consequence if a secured creditor fails to invoke §506(b) to supplement its prepetition claim.  Section 1328(a) provides different outcomes depending upon whether or not the creditor's claim was treated under §1322(b)(5).  If the debtor has completed a plan that treated the secured claim under §1322(b)(5), §1328(a) instructs that the secured creditor's contractual rights are unaffected.

Another possible statutory source of authority for additional procedural requirements is §1322(b)(5).  Jones itself implies that the duty it finds in the Code is derived from §1322(b)(5) when it speaks of the nondisclosure of the charges as potentially "thwarting" the purpose of the bankruptcy case  –  the purpose of the case being the implementation of the cure of the prepetition default as authorized by §1322(b)(5).  Section 1322(b)(5) may be a more appropriate

---

[55]      BAPCPA modified the text by adding the phrase "or State statute" after the word "agreement."  I have quoted the statutory text that is applicable in this case.

source of any duty that might exist as it would apply more broadly than §506(b); it would apply in cases in which §506(b) is "trumped" by §1322(e) and it would also encompass charges imposed postpetition/postconfirmation.

For reasons similar to those expressed above regarding §506(b), no implied statutory duty to give notice of the assessment of postpetition legal expenses can be found in 11 U.S.C. §1322(b)(5).  Again, the text of the statute does not establish any obligations or deadlines for a secured creditor to give notice of or seek payment of legal expenses incurred postpetition. Section 1322(b)(5) speaks only of the power of the debtor to propose a certain type of chapter 13 plan: one which provides for the "curing" of a prepetition default and "the maintenance of payments while the case is pending."  Section 1322(b)(5) is a provision that gives authority to the debtor and describes the obligations the debtor must satisfy to avail himself or herself of this power.  It cannot be read fairly to impose any duties on creditors.

In the absence of a textual expression of Congress' intent to impose a procedural deadline on creditors, there is no justification for finding an implied deadline in the statute through a holistic reading of §506(b) and/or §1322(b)(5).  Assuming, arguendo, that in order to promote efficient and effective case administration, procedural requirements not found in the parties' contract may be imposed on secured creditors with respect to the debtor's postpetition payment obligations in a chapter 13 case, there are other mechanisms for establishing those requirements. It is unnecessary to stretch the statute to impose legal obligations that are not expressed in the text.  If a procedural vacuum exists that needs to be filled, it is more appropriate to do so either

through the enactment of rules of court[56] or the confirmation of chapter 13 plans that include

necessary and appropriate procedural provisions addressing the subject matter.[57]

---

[56]      With the possible exception of Fed. R. Bankr. P. 2016, which will be discussed in
Part VIII.B.4 below, there are no national court rules establishing procedures with respect to
amounts falling due postpetition in cases involving the cure of a prepetition default under
§1322(b).

Some bankruptcy courts have adopted local rules or issued general orders as an
apparent response to the concerns raised about the practice of some secured creditor of deferring
until after the conclusion of a chapter 13 case the collection of legal expenses and other charges
incurred during the pendency of the case.  See Local Bankruptcy Rule 3070-1(B) (Bankr. S.D.
Fla.) (requiring secured creditors to file notices with the court of payment changes and legal
expenses and providing dispute resolution procedures); Local Bankruptcy Rule 3015-1 (Bankr.
N.D. Ill. eff. June 1, 2003) (mandating use of "model" chapter 13 plan that provides, inter alia, a
procedure for determining the existence of any unpaid postpetition obligation following the
chapter 13 trustee's final distribution); In re Payne, 2008 WL 1961489, at *8 (referring to
Standing Order 07-4 as being designed "to keep mortgagees from assessing post-petition charges
without notice to debtors"); In re Ransom, 361 B.R. 895 (Bankr. D. Mont. 2007) (in chapter 13
case, citing its Local Bankruptcy Rule 2016-1(d) as authority for requiring oversecured creditors
to seek court approval of postpetition fees either by application or through a detail proof of
claim); In re Anderson, 382 B.R. 496, 501 -502 (Bankr. D. Or. 2008) (referencing General
Orders 97-1 and 98-1, which set forth procedures for creditors seeking reimbursement of
postpetition attorney's fees and costs).

No local rules have been adopted in this district that set forth any procedures
governing the assessment of postpetition legal expenses of a secured creditor whose claim is
being treated under §1322(b)(5).

[57]      In this developing area, courts have differed thus far in their willingness to
validate plan provisions regulating the postpetition relationship between the chapter 13 debtor
and residential mortgage lender.  Compare In re Watson, 384 B.R. 697, 699 (Bankr. D. Del.
2008);  In re Andrews, 2007 WL 2793401 (Bankr. D. Kan. Sept. 26, 2007) (authorizing plan
provision providing procedure for determining the existence of any unpaid postpetition
obligation following the chapter 13 trustee's final distribution); In re Collins, 2007 WL 2116416
(Bankr. E.D. Tenn. July 19, 2007) (same as Andrews) with In re Walter, 2008 Bankr. Lexis 1039
(Bankr. D.S.C.  Apr. 10, 2008) (approving certain proposed plan revisions governing the
postpetition mortgage payments and disapproving other provisions as  an impermissible
modification of the mortgagee's contractual rights);  In re Maupin, 384 B.R. 421 (Bankr. W.D.
Va. 2007) (rejecting plan provisions as either redundant or an impermissible modification of the
mortgagee's contractual rights).

### E.  Fed. R. Bankr. P. 2016

Having concluded that there is no statutory support in the Bankruptcy Code for the proposition that a secured creditor, whose claim is being treated under §1322(b)(5) has a legal duty to give notice of or make demand for payment of the expenses during the pendency of the bankruptcy case, I consider next whether any such obligation is set forth in the rules of court.

There are national court rules addressing form, content and time deadlines for asserting a prepetition claim in a chapter 13 case, see Fed. R. Bankr. P. 3001, 3002.  But no such rules exist with respect to amounts falling due postpetition in cases involving the cure of a prepetition default under §1322(b).

A number of courts have held that Fed. R. Bankr. P. 2016(a) imposes a disclosure and court approval requirement with respect to a secured creditor's claim for reimbursement of legal expenses.  E.g., In re Payne, 2008 WL 1961489, at *8; In re Hence, 2007 WL 4333834, *7 (Bankr. S.D. Tex. Dec. 5, 2007); In re Padilla, 379 B.R. at 654-55; In re Plant, 288 B.R. at 644. These courts base their holdings on what they consider the plain language of the rule.  They focus on the language in the rule that imposes an obligation to obtain court approval whenever compensation and reimbursement of expenses is sought "from the estate" and that defines the reach of the rule as including, inter alia, any attorney, "even though the application is filed by a creditor or other entity."  Fed. R. Bankr. P. 2016(a).

Initially, I observe that even if Rule 2016(a) applies to professional compensation requested by creditors, it does not provide a comprehensive solution to the perceived problem of nondisclosure of postpetition contractual obligations arising under mortgages being treated under §1322(b)(5).  Disputes as to whether chapter 13 debtors have satisfied his or her postpetition

obligation (i.e., "the maintenance of payments while the case is pending," see 11 U.S.C.

§1322(b)(5)), often involve charges other than legal expenses.  Changes in interest rate and

escrow requirements, if not communicated to the debtor (or the trustee),[58] create the same risk of

adverse consequences for the debtor as does the nondisclosure of postpetition legal expenses.

Yet, such undisclosed postpetition changes in the monthly payment and escrow requirements

undeniably fall outside the scope of Rule 2016.

More to the point, for two (2) reasons, I disagree with the conclusion that Rule 2016(a)

applies to a creditor that incurs postpetition legal expenses that may be contractually assessed

against a debtor's mortgage account when the creditor makes no effort to obtain payment during

the pendency of the bankruptcy case – as occurred in this case.

First, Rule 2016(a) does not apply because at no point did the creditor in this case seek

payment of legal expenses "from the estate," as required for the rule to apply.  Instead, GMACM

sought payment from the Debtor only after the bankruptcy estate ceased to exist by operation of

law.  See 11 U.S.C. §554(c) (all unadministered property of the estate is abandoned to the debtor

at the time the case is closed).  Under the plain language of Rule 2016(a), it does not apply.

Second, reliance on Rule 2016(a) as a source of authority for the proposition at issue here

also suffers from the same infirmities as reliance upon 11 U.S.C. §§506(b) and 1322(b)(5).

Under its plain language, the rule does not apply to a creditor who does not seek legal expenses

from the bankruptcy estate.  The application of the rule to a creditor who makes no demand for

---

[58]      I refer to the trustee in recognition of the fact that, in many districts, the chapter 13
trustee serves as the disbursing agent with respect to the plan payments that cure the prepetition
default and the payments to the secured creditor that are designed to comply with "the
maintenance of payments obligation" under §1322(b)(5).

payment during the pendency of the bankruptcy case puts undue emphasis on a few words ("even though the application is filed by a creditor or other entity") without considering the context in which those words are used.  That context must include consideration of §1328(a), which leaves the secured creditors' contractual rights unaltered at the conclusion of a chapter 13 plan that provides for the cure of a default under §1322(b)(5).

### F.  The GMACM Mortgage

Finally, I consider whether the parties' contract imposed a procedural requirement or temporal deadline on GMACM to give notice or make demand for payment of the postpetition legal expenses.  If so, arguably, that procedural requirement was incorporated into the Confirmed Plan and any failure to comply with the requirement may have violated the Confirmed Plan.  A violation of the Confirmed Plan would implicate 11 U.S.C. §1327(a).

Here, the Debtor does not contend that GMACM Mortgage imposed any procedural requirements or time deadlines that might produce a waiver of GMACM's right to payment of legal expenses that were incurred but not demanded during the pendency of the bankruptcycase.[59]

---

[59]      In this case, I have no reason to consider whether a delay in giving notice of or in demanding payment of a charge incurred may provide a homeowner with an estoppel, equitable or other defense under applicable law. See In re Dominique, 368 B.R. 913 (Bankr. S.D. Fla. 2007) (waiver of right to collect escrow shortage due to failure to comply with Real Estate Settlement and Procedures Act, 12 U.S.C. §§ 2601 et seq. and Fla. Stat. §501.137(2)).  Claim No. 6 is based solely on alleged violations of the Confirmed Plan and 11 U.S.C. §1327(a); accord, Chase Manhattan Mortg. Corp. v. Padgett, 268 B.R. 309 (S.D. Fla. 2001); In re Payne, 2008 WL 1961489, at *13; In re Johnson, 384 B.R. 763, 775-74 (Bankr. E.D. Mich. 2008).

Nor do I find any such obligation based on my review of the GMACM Mortgage.[60]  GMACM

appears to have been within its contractual rights to defer notice of and efforts to collect the legal

expenses that it incurred during the pendency of the bankruptcy case.  Thus, to the extent that the

contractual duties of the parties were incorporated into the Confirmed Plan, the Amended

Complaint sets forth no basis for finding a violation of the Confirmed Plan.


## G.  Summary

To sum up, I find that the statute (11 U.S.C. §§506(b), 11 U.S.C. §1322(b)(5)) did not

impose any obligation on GMACM  to give notice or make demand for payment of the

postpetition legal expenses during the pendency of the Debtor's bankruptcy case.  I find no such

requirement in the Federal Rules of Bankruptcy Procedure.  During the pendency of this case,

there were no local rules in this district establishing procedures regarding the assessment of

postpetition legal expenses.  The subject is not mentioned in the Confirmed Plan and GMACM

Mortgage itself imposes no such duty on GMACM.  In these circumstances, GMACM retained

its right, without violating the Confirmed Plan, to seek payment of legal expenses that GMACM

asserts that it incurred during the pendency of the bankruptcy case that it further asserts that it is

entitled contractually to assess against the Debtor's mortgage account.  Therefore, Claim No. 6

fails to state a claim for relief under 11 U.S.C. §1327(a) and 105(a) for violation of the terms of

---

[60]    For example, paragraph 7 of the GMACM Mortgage provides that any amounts
disbursed for, inter alia, payment of attorney's fees in connection with bankruptcy proceedings
shall become additional debt of Borrower secured by the mortgage "and shall be payable with
interest, upon notice from Lender to Borrower requesting payment."  No time deadline is
established for GMACM to make its demand for reimbursement of its legal expenses.

the Confirmed Plan.


## IX.  GMACM'S REQUEST THAT THE CLASS ALLEGATIONS BE STRICKEN WILL BE GRANTED, EXCEPT AS TO CLAIM NO. 5

### A.  Dismissal of Class Claims Based on Claim Nos. 1-4 and 6

In the Motion, GMACM requests that the court strike the Debtor's class claims.  As stated earlier, the Amended Complaint divides the class she seeks to represent into two (2) sub-classes: (1) those debtors who completed their chapter 13 bankruptcy plan "and who, after discharge, have been charged pre-petition, pre-discharge attorney's fees and costs that have been discharged" ("the Prepetition Sub-Class") and (2) those debtors who completed their chapter 13 bankruptcy plan "and who, after discharge, have been charged post-petition, pre-discharge attorney's fees and costs that have been discharged" ("the Postpetition Sub-Class").  See Amended Complaint ¶ 17 (emphasis added).

Dismissal of the Debtor's individual claims denoted as Claim Nos. 1-4 and 6 makes it unnecessary to determine whether this adversary proceeding should proceed as a class action with respect to those claims.  It cannot.  The Debtor cannot be a class representative when her individual claims have been dismissed.  See, e.g., In re Porter, 295 B.R. 529, 542-43 (Bankr. E.D. Pa. 2003).  Therefore,  I will strike the class claims with respect to the Postpetition Sub-Class.

**B.  Claim No. 5**

The Prepetition Sub-Class stands on a different footing, however.  Claim No. 5, which is the basis of the class allegations for the Prepetition Sub-Class, has survived GMACM's motion to dismiss.  Because the Prepetition Sub-Class is the only remaining class, from this point in the Opinion, I will refer to the Prepetition Sub-Class simply as "the class."

### 1.  GMACM's arguments

GMACM arguments for striking the class claims fall into two broad categories.

First, GMACM argues that class definition is inherently flawed because: (1) the Debtor is not even a member of the class she purports to represent; and (2) the class definition includes no time limitation governing the "reach back" period encompassed by the claim.  (GMACM's Memorandum of Law at 18-21).

Second, GMACM argues that class-wide relief is inappropriate due to the inherently fact-specific and case-specific inquiry required to: (1) determine the propriety of reopening the closed bankruptcy cases of class members; (2) assess GMACM's contractual right to reimbursement of legal expenses for each class member; (3) determine whether each class member is subject to a potential waiver defense.[61]

---

[61]    GMACM also makes a series of arguments that class-wide relief is inappropriate because the Debtor's remedy is in the nature of contempt.  (GMACM Mem. of Law at 15-18) Earlier, I have determined that Claim No. 5 is not a contempt claim for violation of a prior court order.  Therefore, I need not further address these arguments.

## 2.  preliminary jurisdictional concerns

The second argument made by GMACM causes me to pause to identify certain issues of subject matter jurisdiction.

GMACM asserts that if a class is certified, each class member would be required to reopen his or her bankruptcy case.  See 11 U.S.C. §350.  Based on this premise, GMACM reasons that "[t]he procedural implications of this alone demonstrates the inappropriateness of Padilla's request for relief on a class-wide basis."  (GMACM Mem. of Law at 18)

This argument is presented as a Federal Rule of Civil Procedure 23 defect, not a jurisdictional argument.  GMACM appears to contend, perhaps based on Rule 23(b)(3)(D),[62] that a class action is unworkable because certification of a class of former bankruptcy debtors necessitates the reopening of the individual bankruptcy cases of all the class members.  GMACM suggests this burden is problematic and a persuasive reason why a class of former bankruptcy debtors should not be certified.

Embedded within this Rule 23 argument is an assumption regarding this court's subject matter jurisdiction.  GMACM does not explain why it believes that reopening each individual class member's bankruptcy case is necessary for certification of the class.  I infer that GMACM's argument is that: (1) to certify a class, subject-matter jurisdiction must exist with respect to each member of the class, not only the named plaintiff;[63] and (2) the bankruptcy court lacks subject

---

[62]     Another weakness in the Amended Complaint is that it does not identify clearly whether the Debtor wishes to proceed under Rule 23(b)(1), (2) or (3).

[63]     See generally Charles A. Wright, Arthur R. Miller, Mary K. Kane, 7A Federal Practice and Procedure 3d §§1755-56 (2005) (explaining that each class member must satisfy the jurisdictional amount requirement in class action based on federal diversity jurisdiction).

matter jurisdiction to afford relief to the class members who are prior bankruptcy debtors unless it reopens each class member's bankruptcy case.

There is authority suggesting that any proceeding or motion filed after a bankruptcy case has concluded falls outside of the bankruptcy court's jurisdiction, unless the case is first reopened.[64] This authority supports the notion that the bankruptcy court cannot exercise jurisdiction over the claims of former debtor class members without reopening their respective cases. However, this legal principle is by no means settled. There are a substantial number of cases holding that a bankruptcy court has jurisdiction to adjudicate a debtor's claim that "arises under" title 11, see 28 U.S.C. §1334(b), without reopening the bankruptcy case.[65]

The sub rosa jurisdictional issue regarding the propriety of exercising jurisdiction over former bankruptcy debtor class members without reopening their respective bankruptcy cases has potentially far-reaching consequences. If no bankruptcy jurisdiction under 28 U.S.C. §1334 can exist over such class members without reopening each case and if it is too cumbersome to do so, it is difficult to envision how a bankruptcy court could ever certify a class of former bankruptcy

---

[64]     See Walnut Associates v. Saidel,164 B.R. 487, 491 (E.D. Pa. 1994); In re Rashid, 2004 WL 2861872, *2 (E.D. Pa. Dec. 13, 2004);  see also In re Ragland, 2006 WL 1997416, *4 (Bankr. E.D. Pa. May 25, 2006) (per Fox, J.) (endorsing the same principle, but adding the qualifying words, "in general").

[65]     See, e.g., Geruschat v. Ernst & Young, LLP (In re Earned Capital Corp.), 331 B.R. 208, 217 (Bankr. W.D. Pa. 2005), aff'd, 346 B.R. 123 (W.D. Pa. 2006); aff'd sub nom. In re Seven Fields Dev. Corp., 505 F.2d 237 (3d Cir. 2007); Singleton v. Wells Fargo Bank, N.A. (In re Singleton), 269 B.R. 270, 276 (Bankr. D.R.I. 2001), vacated on other grounds, 284 B.R. 322 (D.R.I. 2002) (collecting cases); In re Taylor, 216 B.R. 515, 521-22 (Bankr. E.D. Pa. 1998); Aiello v. Providian Fin. Corp. (In re Aiello), 231 B.R. 693, 706 -07 (Bankr. N.D. Ill. 1999), aff'd, 231 B.R. 684 (N.D. Ill. 2000), aff'd, 239 F.3d 876 (7th Cir. 2001).

debtors.[66]

There is at least one other jurisdictional issue lurking in this proceeding. Some courts question whether there is jurisdiction under 28 U.S.C. §1334(b) to consider the claims of class members that do not affect the bankruptcy estate of the class representative. E.g., In re Williams, 244 B.R. 858, 864-65 (S.D. Ga. 2000). Under this view, it is again difficult to perceive how a class of former bankruptcy debtors could ever be certified. Other courts are satisfied that subject matter jurisdiction exists, regardless of whether the claim will affect the class representative's bankruptcy estate, if the asserted claim invokes a substantive right of the debtor under the Bankruptcy Code, thereby falling within the court's "arising under title 11" jurisdiction in 28 U.S.C. §1334(b). See Bank United v. Manley, 273 B.R. at 239-44; accord, In re Aiello, 231 B.R. at 703-06. Under this view, if subject matter jurisdiction exists over the claims of the former debtor/class representative, necessarily there would also be subject matter jurisdiction over the

_____

[66]     If no bankruptcy jurisdiction under 28 U.S.C. §1334 can exist over class members who are former bankruptcy debtors without reopening each individual case and if it is too cumbersome to reopen each such case, perhaps a bankruptcy court may adjudicate the class members' claims through the exercise of supplemental jurisdiction, i.e., jurisdiction that is supplemental to the §1334 bankruptcy jurisdiction exercised over the named plaintiff's claim. See 28 U.S.C. §1367. However, assuming that supplemental jurisdiction applies in the bankruptcy class action context, see Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 125 S.Ct. 2611 (2005) (supplemental jurisdiction statute permits exercise of diversity jurisdiction over additional plaintiffs who fail to satisfy minimum amount-in-controversy requirement, as long as other elements of diversity jurisdiction are present and at least one named plaintiff satisfies amount-in-controversy requirement), it is unclear, at best, whether a bankruptcy court may exercise the supplemental jurisdiction statutorily afforded to the district court. Compare In re Foundation for New Era Philanthropy, 201 B.R. 382, 397-99 (Bankr. E.D. Pa. 1996) (bankruptcy courts do not have such authority) with Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 869 (9th Cir. 2005), cert. denied, 547 U.S. 1206, 126 S.Ct. 2890 (2006) (bankruptcy court's "related to" jurisdiction under 28 U.S.C. §1334 encompasses the district court's supplemental jurisdiction under id. §1367).

claims of the members of a certified class because their claims, too, would arise under title 11.

Depending upon the strength of the Debtor's future class certification motion, I may never need to decide the broad jurisdictional issues identified above. It will become necessary to determine the jurisdictional propriety of certifying a class of former bankruptcy debtors only if the Debtor establishes that a number of other requirements for class certification exist, including numerosity, commonality and typicality. See Fed. R. Civ. P. 23(a).

At this time, I consider it appropriate, in the exercise of my discretion, to defer a decision on these jurisdictional issues to a later stage of the proceeding. In taking this approach, I am aware of the Court of Appeals' general admonition that a federal court is required to reach a jurisdiction question before turning to the merits of a controversy.[67] However, a decision not to certify a class under Rule 23 is not a determination on the merits of the claims of the class members. It is simply an alternative path for declining to adjudicate the merits of the class members' claims. Just last year, the Supreme Court approved such an approach, explaining that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 127 S.Ct. 1184 (U.S. 2007) (internal quotations and citations omitted). Here, if I ultimately decline to certify a class based on Rule 23, I will simply be choosing a non-jurisdictional "threshold ground" for denying a forum to the class members. Deferring a decision on the propriety of certifying a class until the record has been further developed will enable me to evaluate all of the requirements  –

---

[67]    See In re Hechinger Inv. Co. of Delaware, Inc., 335 F.3d 243, 249 (3d Cir. 2003); In re Orthopedic "Bone Screw" Products Liability Litigation, 132 F.3d 152, 155-56 (3d Cir. 1997); Pacific Intermountain Express Co. v. Hawaii Plastics Corp., 528 F.2d 911, 912 (3d Cir. 1976).

jurisdictional and nonjurisdictional – that must be considered before rendering a decision on

class certification, thereby providing flexibility for choosing the most appropriate basis for

deciding this case.[68]

Having noted the existence of certain jurisdictional issues without deciding them, I return

to the nonjurisdictional grounds GMACM presently asserts for striking the class claims.


### 3.  the request to strike the class claim is premature

The various arguments made by GMACM in its motion to strike the class allegations all

challenge, in one way or another, the Debtor's ability to satisfy the Rule 23 standards for class

certification.  Coming, as it does, as part of a Rule 12(b)(6) motion to dismiss, I find the request

to strike the class claim to be premature.

Initially, I observe that a motion to strike class allegations is addressed in Rule

23(d)(1)(D), which provides that the court may "require that the pleadings be amended to

eliminate allegations about representation of absent persons and that the action proceed

---

[68]    See generally Greater New Orleans Broadcasting Ass'n, Inc. v. U.S., 527 U.S.
173, 184, 119 S.Ct. 1923, 1930 (1999) (in context of cases raising constitutional issues, federal
courts "do not ordinarily reach out to make novel or unnecessarily broad pronouncements . . .
when a case can be fully resolved on a narrower ground"); David Crump, How Do the Courts
Really Discover Unenumerated Fundamental Rights? Cataloguing the Methods of Judicial
Alchemy, 19 Harv. J.L. & Pub. Pol'y 795, 866 (1996) ("the judicial role implies decision on
narrow grounds"); Michael Wells, Busting the Hart & Wechsler Paradigm, 11 Const. Comment
557, 578 (1994-95) (the "common law method calls for decision on narrow grounds"); Charles
W. Collier, The Use and Abuse of Humanistic Theory in Law: Reexamining the Assumptions
Interdisciplinary Legal Scholarship, 41 Duke L.J. 191, 234-35 (November 1991) (suggesting that
the rendering decisions on narrow grounds is one of the passive virtues of  judicial restraint
embedded in the proper exercise of federal judicial power).

accordingly."[69]  However, a Rule 23(d)(1)(D) motion to strike class allegations is designed to

modify the pleadings only after the court has ascertained, in an earlier determination, that

maintenance of a class action is inappropriate.  E.g., Korman v. Walking Co., 503 F.Supp.2d

755, 762 (E.D. Pa. 2007).  Usually, that earlier determination would be the denial of motion for

class certification.  The general rule is that  Rule 23(d)(1)(D) motions to strike class allegations

"are premature and that the proper avenue is to oppose the plaintiff's motion for class

certification."  Id.; accord, Silverman v. Smithkline Beecham Corp., 2007 WL 3072274, *2 (C.D.

Cal. Oct. 16, 2007).

There, however, is an exception to this principle.  If there are valid grounds for striking

the class claims that are distinct from the factors considered in a motion for class certification,

the court may strike the class claims from the complaint.  See Rahman v. Smith & Wollensky

Restaurant Group, Inc., 2008 WL 161230, *3 (S.D.N.Y. Jan. 16, 2008); accord, In re Initial

Public Offering Securities Litigation, 2008 WL 2050781, *2 (S.D.N.Y.  May 13, 2008); Joseph

M. McLaughlin, 1 McLaughlin on Class Actions §3.4 (Westlaw 2008) ("motions to strike [class

action allegations] should not be the norm but are appropriate where the unsuitability of class

treatment is evident on the face of the complaint and incontrovertible facts").

All of the arguments raised by GMACM's motion to strike are appropriate subjects for

resolution in the context of a motion for class certification.[70]  GMACM has articulated no

_____

[69]     Prior to the 2007 restyling of the Federal Rules of Civil Procedure, the content of
current Rule 23(d)(1)(D) was found in former Rule 23(d)(4).

[70]     GMACM may be correct in its contention that the class definition set forth in the
Complaint is faulty.  However, that definition can easily be adjusted at the class certification
stage, if it is otherwise appropriate to certify a class.  See, e.g., In re Wal-Mart Stores, Inc. Wage

reasons, independent of the satisfaction of Rule 23 requirements, for striking the class action allegations.  In these circumstances, as Judge Robreno concluded in Korman, "it would be improper to allow [the defendant] to slip through the backdoor what is essentially an opposition to a motion for class certification before [the plaintiff] has made such a motion" and before discovery on the issue has been concluded.  Korman, 503 F.Supp. at 762 (citing Beauperthuy v. 24 Hour Fitness USA, Inc., 2006 U.S. Dist. LEXIS 88988, *10 (N.D. Cal. Nov. 28, 2006)).

## X.    CONCLUSION

For the reasons set forth above, I will grant the Motion to Dismiss in large part.  All of the claims set forth in the Amended Complaint that I have denoted as Claim Nos. 1-4 and 6 will be dismissed and the related class allegations will be stricken.  The Motion will be denied in its entirety as to the claim that I have denoted as Claim No. 5.

An Order consistent with this Opinion will be entered.

Date:   June 30, 2008    

                        _____
                        **ERIC L. FRANK**
                        **U.S. BANKRUPTCY JUDGE**

_____

and Hour Litigation 505 F.Supp.2d 609, 614-16 (N.D. Cal. 2007) ("[w]hile plaintiffs' class definitions are suspicious and may in fact be improper, plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery").

-69-